# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TREVOR BAUER,<br><br>            Plaintiff,<br><br>       v.<br><br>CHRIS BAUD, and G/O MEDIA, INC.,<br><br>            Defendants. | No.: 1:22-cv-01822-PAC-OTW |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Blair G. Brown
Jon R. Fetterolf
ZUCKERMAN SPAEDER LLP
1800 M Street, NW, Suite 1000
Washington, DC 20036
(202) 778-1800
bbrown@zuckerman.com
jfetterolf@zuckerman.com

Shawn P. Naunton
Nell Z. Peyser
Mark J. Feaster
ZUCKERMAN SPAEDER LLP
485 Madison Avenue, 10th Floor
New York, NY 10022
(212) 704-9600
snaunton@zuckerman.com
npeyser@zuckerman.com
mfeaster@zuckerman.com

*Attorneys for Plaintiff*
*Trevor Bauer*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ......................................................................................................... 2

STATEMENT OF FACTS ........................................................................................... 2

    A.   *Deadspin* Publishes a Slew of Articles Impugning Mr. Bauer ........................... 2

    B.   Mr. Bauer is Falsely Accused of Sexual Assault and Denies the Accusations.................. 3

    C.   *Deadspin* Publishes the Article Containing Various Defamatory Statements Despite Possessing Facts to the Contrary............................................................................ 3

    D.   A State Court Tosses the Sexual Assault Petition as "Materially Misleading" and the Los Angeles District Attorney Declines to Press Charges................................... 4

    E.   Mr. Bauer Files the Instant Lawsuit..................................................................... 5

STANDARD OF REVIEW .......................................................................................... 5

ARGUMENT ................................................................................................................ 6

I.    THE DEFAMATORY STATEMENTS ARE FALSE AND NOT SUBSTANTIALLY TRUE ................................................................................................ 7

    A.   The Responsibility Statement is Not Substantially True ................................... 8

    B.   The Skull Fracture and CT Scan Statements are Not Substantially True ......................... 10

    C.   The Skull Fracture Statement is Not Rhetorical Hyperbole .............................. 12

II.   THE INCREMENTAL HARM DOCTRINE DOES NOT BAR MR. BAUER'S CLAIM ............................................................................................. 14

III.  THE DEFAMATORY STATEMENTS ARE NOT A FAIR AND ACCURATE REPORT AND THEREFORE NOT PRIVILEGED ............................................. 16

IV.  MR. BAUER HAS ALLEGED ACTUAL MALICE.......................................... 18

V.   THE DEFAMATORY STATEMENTS ARE DEFAMATION *PER SE* ........................... 21

CONCLUSION ............................................................................................................ 23

<u>**TABLE OF AUTHORITIES**</u>

**CASES**

*Aboutaam v. Dow Jones & Co.*,
   No. 156399/2017, 2019 WL 1359772 (Sup. Ct., N.Y. Cty. Mar. 26, 2019) ........................... 11

*Arizona Biochemical Co. v. Hearst Corp.*,
   302 F. Supp. 412 (S.D.N.Y. 1969) ................................................................................... 18–19

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007) ...................................................................................................... 6

*Bavarian Motor Works Ltd. v. Manchester*,
   61 Misc. 2d 309 (Sup. Ct., N.Y. Cty. 1969) .......................................................................... 18

*Bufalino v. Associated Press*,
   692 F.2d 266 (2d Cir. 1982) .................................................................................................. 16

*Cabello-Rondon v. Dow Jones & Co., Inc.*,
   16-cv-3346 (KBF), 2017 WL 3531551 (S.D.N.Y. Aug. 16, 2017).......................................... 8

*Celle v. Filipino Rep. Enterprises Inc.*,
   209 F.3d 163 (2d Cir. 2000) .................................................................................................... 6

*Chau v. Lewis*,
   935 F. Supp. 2d 644 (S.D.N.Y. 2013), *aff'd*, 771 F.3d 118 (2d Cir. 2014) ......................... 7, 10

*Cholowsky v. Civiletti*,
   69 A.D.3d 110 (2d Dep't 2009)............................................................................................. 16

*Church of Scientology Int'l v. Behar*,
   238 F.3d 168 (2d Cir.2001) ..................................................................................................... 6

*Church of Scientology Int'l v. Time Warner, Inc.*,
   932 F. Supp. 589 (S.D.N.Y. 1996) ....................................................................................... 15

*Da Silva v. Time Inc.*,
   908 F. Supp. 184 (S.D.N.Y. 1995) .......................................................................................... 8

*Davis v. Boeheim*,
   24 N.Y.3d 262 (2014) ........................................................................................................... 12

*Exec. Trim Constr., Inc. v. Gross*,
   525 F. Supp. 3d 357 (N.D.N.Y. 2021)..................................................................................... 5

*Flamm v. Am. Ass'n of Univ. Women*,
   201 F.3d 144 (2d Cir. 2000) ............................................................................................ 12, 13

*Franco v. Diaz*,
  51 F. Supp. 3d 235 (E.D.N.Y. 2014) ............................................................ 22

*Gerbert v. Robert Welch*,
  418 U.S. 323 (1974) ...................................................................................... 20

*Goldman v. Reddington*,
  417 F. Supp. 3d 163 (E.D.N.Y. 2019) .................................................... *passim*

*Greenberg v. Spitzer*,
  155 A.D.3d 27 (2d Dep't 2017) ............................................................ 14, 17

*Herbert v. Lando*,
  781 F.2d 298 (2d Cir. 1986) ................................................................. 14, 15

*Ingber v. Lagarenne*,
  299 A.D.2d 608 (3d Dep't 2002) .................................................................. 8

*James v. DeGrandis*,
  138 F. Supp. 2d 402 (W.D.N.Y. 2001) ........................................................ 15

*Jewell v. NYP Holdings, Inc.*,
  23 F. Supp. 2d 348 (S.D.N.Y.1998) ..................................................... 10, 14

*Kramer v. Time Warner Inc.*,
  937 F.2d 767 (2d Cir.1991) ............................................................................ 2

*Lee v. City of Rochester*,
  663 N.Y.S.2d 738 (Sup. Ct. 1997) ............................................................... 15

*Lee v. City of Rochester*,
  663 N.Y.S.2d 738 (Sup. Ct., Monroe Cty. 1997) ........................................ 15

*Liberman v. Gelstein*,
  80 N.Y.2d 429 (1992) ................................................................................... 23

*Liberty Lobby, Inc. v. Anderson*,
  746 F.2d 1563 (D.C. Cir. 1984) .................................................................. 14

*Martin v. Daily News L.P.*,
  121 A.D.3d 90 (1st Dep't 2014) ........................................................... 17, 18

*Meloff v. New York Life Ins. Co.*,
  240 F.3d 138 (2d Cir. 2001) ........................................................................ 11

*Mitre Sports Int'l Ltd. v. Home Box Off., Inc.*,
  22 F. Supp. 3d 240 (S.D.N.Y. 2014) ........................................................ 7, 12

iii

*Palin v. New York Times Co.*,
   940 F.3d 804 (2d Cir. 2019) .......................................................................... *passim*

*Patane v. Clark*,
   508 F.3d 106 (2d Cir. 2007) ........................................................................... 5

*Pisani v. Staten Island Univ. Hosp.*,
   440 F. Supp. 2d 168 (E.D.N.Y. 2006) ......................................................... 2, 6

*Primiani v. Vintage* 185 Inc.,
   No. 2:18-CV-2237 (ADS) (AYS), 2019 WL 486087 (E.D.N.Y. Feb. 6, 2019) ........................ 8

*Sharon v. Time, Inc.*,
   575 F. Supp. 1162 (S.D.N.Y. 1983) ............................................................... 22

*Sharon v. Time, Inc.*,
   599 F. Supp. 538 (S.D.N.Y. 1984) ............................................................ 18, 21

*Stern v. Cosby*,
   645 F. Supp. 2d 258 (S.D.N.Y. 2009) ........................................................... 14

*Stone v. Bloomberg L.P.*,
   163 A.D.3d 1028 (2d Dep't 2018) ................................................................. 17

*Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media, LLC*,
   864 F.3d 236 (2d Cir. 2017) ................................................................... 7, 8, 9

*Weixel v. Bd. of Educ. of the City of N.Y.*,
   287 F.3d 138 (2d Cir.2002) ........................................................................... 6

*Wright v. Dennis*,
   No. 0604318/2006, 2008 WL 475914 (Sup. Ct., N.Y. Cty. Feb. 11, 2008) .............................. 8

*Zherka v. Amicone*,
   634 F.3d 642 (2d Cir. 2011) ......................................................................... 22

## STATUTES

N.Y. Civ. Rights Law § 74 (McKinney) .................................................................. 16

## OTHER AUTHORITIES

David A. Elder, Defamation: A Lawyer's Guide, at § 3:2 (2012) ................................. 16

https://www.tmz.com/2021/06/29/trevor-bauer-accused-of-assault-woman-files-restraining-
   order-pitcher-denies-allegations/ ............................................................... 9

## <u>INTRODUCTION</u>

Plaintiff Trevor Bauer's ("Mr. Bauer") complaint more than sufficiently states a claim for relief. Defendants G/O Media, Inc. and Chris Baud ("Defendants") published an article falsely accusing Mr. Bauer of fracturing the skull of a woman (referred to as "L.H." herein), even though Defendants were in possession of medical records and other reporting that showed this was untrue. Additionally, in the same article, Defendants falsely asserted that Mr. Bauer did not deny responsibility for sexually assaulting that woman. This is defamation *per se*. It is that simple.

The defamatory statements challenged in this lawsuit are merely the climax of a prolonged smear campaign that Defendants have waged against Mr. Bauer for years.  Defendants took an already traumatic experience in Mr. Bauer's life—being falsely accused of sexual assault—and added insult to injury by knowingly reporting false facts that were worse than what was in his accuser's petition.  Shortly thereafter, a California court squarely denied L.H.'s petition on the basis that it was materially misleading and that L.H. consented to the sexual encounter.  However, the damage done to Mr. Bauer by Defendants' reporting remains unresolved.  Defendants' false accusation of a heinous crime, without any mention of his denial of responsibility nor the medical report *attached to the petition* debunking L.H.'s recount of her injuries, ensured that Mr. Bauer was convicted by the court of public opinion, nonetheless. This constitutes defamation *per se* under New York law.

Defendants raise several arguments in support of their motion to dismiss.  Each of these arguments fails.  First, each defamatory statement is false and not substantially true.  As written, they produce a significantly worse impression of Mr. Bauer in the mind of the reader than the reported truth would have done.  Second, the harm to Mr. Bauer caused by the defamatory statements is more than "nominal" compared to other details in the Article and therefore the incremental harm doctrine is inapplicable.  Third, the Article is not privileged because it does not

convey a substantially accurate report of the facts.  Fourth, the Complaint contains more than enough factual allegations to support an inference of malice.  And finally, the Complaint states a claim for defamation *per se* so special damages need not be alleged.  The Motion should be denied.

## STATEMENT OF FACTS

Defendants' statement of facts mischaracterizes the record, gratuitously disparages Mr. Bauer, and inappropriately relies on materials outside of the pleadings.[1]  Accordingly, a brief but accurate recitation of the relevant facts and allegations is warranted.

### A.  *Deadspin* Publishes a Slew of Articles Impugning Mr. Bauer

Mr. Bauer is a professional baseball player and pitcher for the Los Angeles Dodgers. *Deadspin* is an online sports-news website and is owned by Defendant G/O Media, Inc.  For years, it has endeavored to harass Mr. Bauer, impugn his reputation, and spread falsehoods about him. Compl. ¶ 16, ECF No. 3.  For example, as early as 2019, *Deadspin* wrote an article calling Mr. Bauer "an asshole" and "nothing more than a stupid person's idea of a smart person." *Id.* ¶ 17.  In another news story, *Deadspin* falsely characterized Mr. Bauer's response to an individual's tweets about him as an "ongoing harassment campaign." *Id.* ¶ 18.  In the following years, *Deadspin* made its distaste for Mr. Bauer exceedingly clear by calling him everything from a "Dumb Little Pissbaby," a "racist, sexist jackass," and a "raging asshole." *Id.* ¶¶ 19, 25, 31.  In addition to hurling these insults, *Deadspin* systematically attempted to derail Mr. Bauer's career through false reporting on his interactions with women and claiming that many people in major league baseball

---

[1] While the Court may consider L.H.'s petition and other materials expressly relied on in the Complaint, the Court may not consider extraneous or additional records at the motion to dismiss stage.  *See also Pisani v. Staten Island Univ. Hosp.*, 440 F. Supp. 2d 168, 171 (E.D.N.Y. 2006) ("For purposes of a motion to dismiss, the Court is limited to the contents of the complaint and 'the facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference.'") (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir.1991)).  Therefore, the Court should not consider the articles cited by Defendants in their Motion that were not specifically cited in the Complaint.

dislike him. *Id.* ¶¶ 20, 34, 38.  To use *Deadspin*'s own words, "[they've] said plenty [t]here about Trevor Bauer, mostly about him being a colossal jerk." *Id.* ¶ 38.  The extent of *Deadspin*'s malicious smear campaign against Mr. Bauer is set out at length in the Complaint. *Id.* ¶¶ 16–38.

### B.  Mr. Bauer is Falsely Accused of Sexual Assault and Denies the Accusations

In May and June 2021, Mr. Bauer was falsely accused of sexual assault by L.H. *Id.* ¶ 2. On June 28, 2021, L.H. filed a petition for a restraining order against Mr. Bauer based on these false allegations of sexual assault. *Id.* ¶ 39.  The petition contained a declaration from L.H. alleging that she was given a CT scan because of "signs of a basilar skull fracture." *Id.* However, her medical records conclusively found from the CT scans that she did not suffer a skull fracture. *Id.* These medical records were both attached to her petition and publicly available on the Los Angeles Superior Court docket. *Id.*  At the time these allegations were levied against him, Mr. Bauer vigorously denied them. *See id.* ¶¶ 56, 108.  His encounters with L.H. were entirely consensual and she had requested rough sex. *Id.* ¶¶ 75–76. L.H.'s petition was fraudulent and deliberately omitted key facts. *Id.* ¶ 51.  A California judge would later confirm that L.H.'s allegations of sexual assault were unfounded because the encounter was consensual and that her petition was "materially misleading" and she had unambiguously requested "rough sex." *Id.* ¶¶ 75–76.

Many news outlets picked up the story of L.H.'s accusations.  Much of this other reporting explained that there was no fracture of L.H.'s skull.  *See id.* ¶ 44

### C. *Deadspin* Publishes the Article Containing Various Defamatory Statements Despite Possessing Facts to the Contrary

On July 6, 2021, *Deadspin* published the article, written by Mr. Baud, titled "Trevor Bauer should never pitch again: MLB needs to throw the book at him over sex assault allegations," (the "Article"). *Id.* ¶ 45.  The Article falsely stated that L.H. had "her skull fractured" by Mr. Bauer, (the "Skull Fracture Statement") and that Mr. Bauer's "legal team's defense" was that "[i]t was

only the initial CT scan that showed a fracture," (the "CT Scan Statement"). *Id.* ¶ 46. The Article also falsely stated that there was "nothing in Mr. Bauer's reported actions or his lawyer John [sic] Fetterolf's statement that indicate an attempt to deny that he was responsible," (the "Responsibility Statement."). *Id.* ¶ 50. Individually and in combination with one another, these statements in the Article conveyed the false impression that Mr. Bauer fractured a woman's skull and admitted to doing so. *Id.* ¶ 52. These statements and the impression they created are patently false.

In fact, the primary sources cited by the Article confirmed that there was no skull fracture and Mr. Bauer denied responsibility for L.H.'s claims. The Article identified *The Athletic's* article as its source and did not purport to rely on L.H.'s state court declaration nor the medical records attached thereto. *Id.* ¶ 49. Additionally, the Article linked to a *TMZ* article that contained a quote from Mr. Bauer's counsel, Jon Fetterolf, denying responsibility for the charges and stating L.H.'s "basis for filing a protection order is nonexistent, fraudulent, and deliberately omits key facts, information, and her own relevant communications." *Id.* ¶ 51.

### D. A State Court Tosses the Sexual Assault Petition as "Materially Misleading" and the Los Angeles District Attorney Declines to Press Charges

Mr. Bauer was ultimately vindicated and his assertion that the charges were fraudulent was confirmed by both a judge and the district attorney in Los Angeles. On August 19, 2021, the Los Angeles Superior Court denied L.H.'s request for a domestic violence restraining order. *Id.* ¶ 75. Judge Dianna Gould-Saltman found that L.H. consented to her acts with Mr. Bauer and concluded that Mr. Bauer had not assaulted or abused L.H. The Judge further explained that L.H. "was not ambiguous about wanting rough sex in the parties' first encounter and wanting rougher sex in the second encounter" and that Mr. Bauer "did not exceed the limits that [L.H.] set." *Id.* ¶ 76. The Judge also found that L.H.'s declaration was "materially misleading" and that her allegations lacked credibility. *Id.* ¶ 75. Months later, on February 8, 2022, the Los Angeles District Attorney

stated publicly that his office would not charge Mr. Bauer with a crime because "[a]fter a thorough review of the available evidence . . . the People are unable to prove the relevant charges beyond a reasonable doubt." *Id.* ¶¶ 80–81. The District Attorney also explained that the standard of proof in the restraining order proceeding was "very low" and even under that low standard, the allegations could not be proven. *Id.* ¶ 82.

Following the court's rejection of L.H.'s claims, *Deadspin* continued its attacks against Mr. Bauer by, among other actions, making misleading statements regarding the hearing and the court's ruling. *Id.* ¶ 73. For example, in August 2021, *Deadspin* published an article that stated "we know that Trevor Bauer is a man who likes to . . . have anal sex with unconscious women," despite the fact that he had denied such charges previously (and those charges were dismissed by a court). *Id.* ¶¶ 77–78. Additionally, on January 1, 2022, *Deadspin* called Mr. Bauer "dangerous" and "a monster" for his dealings with women. *Id.* ¶ 79.

### E.  Mr. Bauer Files the Instant Lawsuit

Despite his success in the court proceedings against L.H., Mr. Bauer was still condemned in the court of public opinion thanks to *Deadspin*'s reporting. Therefore, on March 3, 2022, Mr. Bauer filed the Complaint against Defendants for defamation *per se* based on the Article. ECF No. 3. Defendants instant motion to dismiss followed.

### <u>STANDARD OF REVIEW</u>

"A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief." *Exec. Trim Constr., Inc. v. Gross*, 525 F. Supp. 3d 357, 365 (N.D.N.Y. 2021) (citing *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007)). "A complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Palin v. New York Times Co.*, 940 F.3d 804, 810 (2d Cir. 2019)

(internal citations omitted).  In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  Dismissal is warranted only if "it appears beyond doubt that the plaintiff[] can prove no set of facts in support of [his] claim[] which would entitle [him] to relief." *Weixel v. Bd. of Educ. of the City of N.Y.*, 287 F.3d 138, 145 (2d Cir.2002); *see also Pisani,* 440 F. Supp. 2d at 171 (denying motion to dismiss defamation claim).[2]

## ARGUMENT

The Complaint states a claim for defamation against Defendants.  An action for defamation that is expressed in writing or print is the common law cause of action of libel.  *See Church of Scientology Int'l v. Behar*, 238 F.3d 168, 173 (2d Cir.2001).  Under New York law, a plaintiff must allege five elements to state a cause of action for libel: "1) a written defamatory statement of fact concerning the plaintiff; 2) publication to a third party; 3) fault (either negligence or actual malice depending on the status of the libeled party); 4) falsity of the defamatory statement; and 5) special damages or per se actionability (defamatory on its face)." *Celle v. Filipino Rep. Enterprises Inc.*, 209 F.3d 163, 176 (2d Cir. 2000).

Here, the Complaint sufficiently alleges all five elements of defamation.  First, the Article contains three defamatory statements of fact: the Skull Fracture Statement, Compl. ¶¶ 46, 91, the CT Scan Statement, *id.* ¶¶ 46, 92, and the Responsibility Statement, *id.* ¶¶ 50, 93.  Second, the statements were published to the public at large through *Deadspin*'s website and social media platforms.  *Id.* ¶ 94.  Third, Defendants acted with malice towards Mr. Bauer as evinced by myriad

---

[2] Furthermore, Defendants mention *in a footnote* that New York's Anti-SLAPP law *may* apply to the instant case. Mot. at 13, n.11.  The Court should not give this argument substantial consideration, as Defendants clearly have not done so themselves.  Nonetheless, Mr. Bauer submits that he has met the "substantial basis" pleading standard for the reasons set forth in this Opposition.

facts, including their decision to ignore *The Athletic's* corrected reporting, refusal to correct the Article as soon as possible, and their years-long campaign to discredit and insult Mr. Bauer through other articles. *Id.* ¶¶ 104–108. The statements are provably false because they are inconsistent with L.H.'s declaration and medical records, the sources cited in the Article, as well as the journalistic consensus at the time the Article was published. *Id.* ¶¶ 95–98. Finally, the statements are defamation per se because they charged him with a serious crime and maligned him in his profession. *Id.* ¶ 109.

Nonetheless, Defendants have moved to dismiss under a few different theories. Each of their arguments fail. Therefore, dismissal is inappropriate.

## I.   The Defamatory Statements Are False and Not Substantially True

Defendants concede that the report contains three inaccuracies but argue that they are only "minor" and that the Article is "substantially true." This argument is specious and must be rejected.

"Statements are held to be not substantially true where the difference between the statement and reality is 'plainly substantial.'" *Chau v. Lewis*, 935 F. Supp. 2d 644, 662 (S.D.N.Y. 2013), *aff'd*, 771 F.3d 118 (2d Cir. 2014). While "minor inaccuracies" do not give rise to defamation, a statement that produces a different effect "on the mind of the reader" than the "pleaded truth" is actionable. *Goldman v. Reddington*, 417 F. Supp. 3d 163, 171 (E.D.N.Y. 2019) (citing *Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media, LLC*, 864 F.3d 236, 242 (2d Cir. 2017)). In other words, a statement is substantially true and not actionable only "if the published statement could have produced no worse an effect on the mind of a reader than the truth pertinent to the allegation." *Mitre Sports Int'l Ltd. v. Home Box Off., Inc.*, 22 F. Supp. 3d 240, 254 (S.D.N.Y. 2014) (internal quotations omitted). Here, a court cannot say that as a matter

of law the defamatory statements produces no worse effect on the mind of the reader than the truth, presenting a question for a jury to decide.

Furthermore, Defendants misstate the standard by which the court should consider their falsity argument. *See* Motion at 14.[3] At this stage, Mr. Bauer is only required to plead "facts that, if proven, would allow a reasonable person to consider [the defamatory statements] false." *Goldman*, 417 F. Supp. 3d at 173–74 (quoting *Tannerite Sports*, *LLC*, 864 F.3d at 245–47). If determining whether a statement is substantially true would require the court to decide disputed facts, then dismissal is not warranted. *See Mitre Sports Int'l Ltd.*, 22 F. Supp. 3d. at 255; *see also Da Silva v. Time Inc.*, 908 F. Supp. 184, 186–87 (S.D.N.Y. 1995) ("The determination of the substantial truth defense to defamation is fact-sensitive."). Mr. Bauer has satisfied this obligation and sufficiently alleged falsity as to each defamatory statement. Indeed, Defendants acknowledge that the statements are not accurate.

### A.  The Responsibility Statement is Not Substantially True

The Article included the false statement that there was "nothing in Mr. Bauer's reported actions or his lawyer John [sic] Fetterolf's statement that indicate an attempt to deny that he was responsible" for L.H.'s injuries and the conduct she described. Compl. ¶¶ 50, 93. This is categorically false. Mr. Bauer did deny responsibility for the charges levied against him by L.H.

---

[3] Under New York law, plaintiffs must offer more than a conclusory statement of falsity but alleging specific facts through which falsity could be plausibly established is sufficient to survive dismissal. *See Cabello-Rondon v. Dow Jones & Co., Inc.,* 16-cv-3346 (KBF), 2017 WL 3531551, at *5 (S.D.N.Y. Aug. 16, 2017) (Plaintiff failed to plead falsity where he did not challenge "the accuracy" of the statement); *see also Primiani v. Vintage* 185 Inc., No. 2:18-CV-2237 (ADS) (AYS), 2019 WL 486087, at *3 (E.D.N.Y. Feb. 6, 2019) (dismissing claim where "vague assertions" failed to identify "what, if any, parts of" allegedly defamatory Google reviews were false). The cases Defendants cite do not support the broad standard for dismissal they set out. *See Ingber v. Lagarenne*, 299 A.D.2d 608, 610 (3d Dep't 2002) (dismissing claim on summary judgment because plaintiffs only "made unsubstantiated assertions" in support their falsity argument); *Wright v. Dennis*, No. 0604318/2006, 2008 WL 475914 (Sup. Ct., N.Y. Cty. Feb. 11, 2008) (dismissing claim because plaintiff did not plead statement was false and acknowledged truth of defamatory statement). Therefore, the instant Complaint is materially distinguishable because Mr. Bauer has specifically alleged which statements are false and he supported his falsity allegations with specific facts.

in her petition. As specifically alleged in the Complaint, Mr. Bauer's counsel issued a statement that said L.H.'s charges were "nonexistent, fraudulent, and deliberately omit[ted] key facts, information, and her own relevant communications." *Id.* ¶ 51. This clear denial of responsibility was quoted in a TMZ article, which Defendants themselves cited. *Id.* Indeed, this denial is so clear that the TMZ article included the phrase "Bauer Denies Allegation" in its title.[4]

Defendants argue that Mr. Fetterolf's statement, read in full, "simply asserts that L.H.'s *legal claim* for a protective order was insufficient because what happened between Plaintiff and L.H. was consensual," and somehow "confirms that Plaintiff *was* responsible for her injuries." Motion at 15 (emphasis in original). This is flawed for a few reasons. First, nowhere in Mr. Fetterolf's statement did he concede that Mr. Bauer fractured L.H.'s skull nor inflicted any other injuries on her. Mr. Fetterolf's assertion that the pair had consensual sex does nothing to verify that Mr. Bauer was responsible for the specific injuries and trauma she alleged. Second, Defendants' argument hinges on an imagined distinction between L.H.'s "legal claim" and the facts underlying that claim. Mr. Fetterolf's statement does more than just simply challenge the legal sufficiency of L.H.'s court filing. Mr. Bauer admitted to having consensual rough sex with L.H., but—as Mr. Fetterolf stated—described her petition (and necessarily the facts underlying it) baseless and "fraudulent."[5] To state that Mr. Bauer failed to deny L.H.'s allegations when he flatly denied them in full, is not a "minor inaccuracy" nor does it convey the "gist" of Mr. Fetterolf's full statement. *See Tannerite Sports*, 864 F.3d at 242–43 (explaining "substantial truth" standard

---

[4]   https://www.tmz.com/2021/06/29/trevor-bauer-accused-of-assault-woman-files-restraining-order-pitcher-denies-allegations/

[5] Defendants also point to the fact that the full statement in the TMZ article was hyperlinked in a confused attempt to establish the truth of the Responsibility Statement. However, hyperlinking to a contrary source merely evinces their disregard for the truth. A hyperlink to another source does not alter the defamatory meaning of a publication.

is about avoiding liability for "technicalities"). Therefore, the Responsibility Statement is not substantially true.

### B.   The Skull Fracture and CT Scan Statements are Not Substantially True

The Article includes the false statements that L.H. had her "skull fractured" and Mr. Bauer's defense to the charges was that "only the initial CT scan showed a fracture." Compl. ¶¶ 46–47, 91–92.  These statements are false and not substantially true.  Mr. Bauer did not fracture L.H.'s skull nor did a CT scan show a fracture.

Defendants attempt to defend these statements by calling them "minor discrepancies" and asserting there is no difference in the "gist" or "sting" between what L.H. actually alleged and the violence the Article described.  This flawed logic rests on several incorrect premises.  First, the argument conflates having "signs of a basilar skull fracture" with the definitive assertion that a woman had her skull fractured.  Those are factually and logically distinct scenarios.  The assertion that Mr. Bauer broke a woman's skull, on one hand, and her self-reporting signs of a possible head injury, on the other hand, are worlds apart.  In other words, the difference between the statements and reality is "plainly substantial."  *Chau*, 935 F. Supp. 2d at 662 (quoting *Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 367 (S.D.N.Y. 1998).  These different "narratives of what transpired would not have the same effect on any reader." *Goldman*, 417 F. Supp. 3d at 174 ("[H]er statement that Goldman raped her, on the one hand, and his contention that the accusation is a deliberate lie, on the other hand, are worlds apart.").  Furthermore, the fact that other news sources had corrected that error before *Deadspin* published the Article further confirms that the difference is substantial.

Additionally, Defendants assert that the gist of the Article is the same as the pleaded truth: "that, according to the Article, L.H.'s injuries were severe enough that she could not have

consented to suffer them." Motion at 16. This is patently false.[6] That point is only made in the Article *because* of the defamatory statements, not in spite of them.

L.H. alleged she suffered various injuries as a result of the rough sex she had with Mr. Bauer, including bruising and choking-related injuries. The Skull Fracture and CT Scan Statements, however, falsely report that the sex had involved violence so extreme that Mr. Bauer broke L.H.'s skull—this is violence leagues beyond anything else alleged in L.H.'s petition. Again, Mr. Bauer denied all responsibility for the conduct alleged and explained L.H. asked for consensual rough sex. Compl. ¶ 51. Without the defamatory statements, the reader could reasonably conclude that the injuries L.H. described in her petition were within the realm of consensual rough sex. However, the assertion that he fractured her skull changes the "gist" of the story from a "he said, she said" consent case, to a story irrefutably about a violent assault. Thus, the Skull Fracture Statement and CT Scan Statements could (and did) "change whether the reader has an evil opinion of Plaintiff after reading the article as a whole." *Aboutaam v. Dow Jones & Co.*, No. 156399/2017, 2019 WL 1359772, at *6 (Sup. Ct., N.Y. Cty. Mar. 26, 2019) (internal quotations omitted).

At a minimum, the "average reader" could potentially find that the Skull Fracture and CT Scan statements produce a different effect on the mind than the pleaded truth. *See Meloff v. New York Life Ins. Co.*, 240 F.3d 138, 146 (2d Cir. 2001) ("Substantial truth turns on the understanding of the 'average reader.'"). As result, the Court should accept as true that the "average reader" would not consider the Skull Fracture Statements and CT Scan Statements substantially true. Such an issue cannot be determined as a matter of law and must be resolved by a jury. *See, e.g., id.*

---

[6] This purported "gist" of the Article is further removed from the truth when one considers that the Article also contained the false statement that Mr. Bauer did not attempt to deny any responsibility for L.H.'s injuries (i.e., the Responsibility Statement).

("What better group of 'average listeners' than a panel of jurors, the proverbial jury of one's peers? As the standard of review requires us to credit the plaintiff with every possible inference a juror could draw, we uphold the jury's findings."); *Mitre Sports Int'l Ltd.*, 22 F. Supp. 3d at 255 ("Because determining whether COI is substantially true would require this court to decide disputed facts . . . summary judgment is not appropriate.").

### C.  <u>The Skull Fracture Statement is Not Rhetorical Hyperbole</u>

Defendants further argue that the Skull Fracture Statement is not actionable because it is merely rhetorical hyperbole.  This is incorrect for a host of reasons.

For a statement to be shielded as hyperbole, it could not reasonably be read to be "stating or implying" a defamatory fact.  *See Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 153 (2d Cir. 2000); *see also Davis v. Boeheim*, 24 N.Y.3d 262, 271 (2014) ("Moreover, they were not 'rhetorical hyperbole rather than objective fact.'") (internal citations omitted).  "Context is central to this analysis, and the ultimate question is whether a reasonable reader *could* have concluded that the statements were conveying facts about the plaintiff." *Goldman*, 417 F. Supp. at 172 (emphasis added).  Indeed, the Second Circuit has held that even general commentary in an editorial can imply facts about an individual to the reasonable reader.  *Palin*, 940 F.3d at 808.[7]  Here, as made

---

[7] In *Palin v. New York Times*, the Second Circuit considered statements from an editorial that stated, while discussing a political shooting, Sarah Palin's political action committee had "circulated a map of targeted electoral districts that put [Gabriel Giffords] and 19 other Democrats under stylized cross hairs" and claimed the "link to political incitement was clear." 940 F.3d at 808.  In the next paragraph, the editorial stated that, although there is some left-wing political violence, "there's no sign of incitement as direct as in the Giffords attack." *Id.*  Palin argued these statements implied that she called for violence as a matter of fact.  The Times, on the other hand, argued that these statements are not reasonably capable of being proven false and thus shielded. *Id.* at 816.  The Second Circuit found the Time's argument "goes nowhere" and "that a reasonable reader could view the challenged statements as factual." *Id.*  These statements in the New York Times are much more generalized and rhetorical than the defamatory statements *Deadspin* published. If a reasonable reader could view those statements as factual, then the reasonable reader would certainly view the instant statements as factual.

clear above, the Skull Fracture Statement can reasonably be read to imply a defamatory fact about Mr. Bauer, i.e., that he fractured a woman's skull.

The context surrounding the Skull Fracture Statement makes clear it was conveying a defamatory fact about Mr. Bauer.  First, the statement appeared in an article published by *Deadspin*, G/O Media's popular news website that regularly reports on current events in sports.  Indeed, G/O Media's "Editorial Policy" makes clear what they publish is news.  *See* Compl. ¶ 66.  It states their "reporters, editors, and video producers must uphold the *highest editorial standards in their pursuit of truth* to ensure that we maintain the special bond of *trust* we have with our audiences.  Our reputation is our most valuable asset."  *Id.*  (Editorial Policy hyperlinked in footnote 26) (emphasis added).  Second, the Article itself purports to accurately cover L.H.'s sexual assault charges against Mr. Bauer.  The quote did not appear, for example, in an Article describing rates of sexual abuse in sports at large and mention Mr. Bauer's case in passing.  Indeed, the Article's title bore Mr. Bauer's name.  Compl. ¶ 45.  How could a reader not understand the Skull Fracture Statement to convey a specific fact about him?  The Article additionally cited various sources, including *The Athletic* and TMZ, to substantiate its reporting.  In fact, the Article starts with the phrase "Here's the news."  Compl., Ex. A.  This context conveys the distinct impression that the Article is recounting facts about L.H.'s allegations against Mr. Bauer in a news story.

Nor can Defendants escape liability because of their "irreverent style and use of hyperbolic language."  Motion at 17.  "Exaggerated rhetoric" alone does not shield defamation.  *Flamm*, 201 F.3d at 151–52 (explaining that "common-place epithets" are still actionable).  *Deadspin* is first and foremost a news website.  Its use of colorful language does not negate that fact.  Indeed, it is *Deadspin's* authority as a news source that "may well have caused [readers] to be less skeptical

and more willing to conclude that [*Deadspin*] was asserting or implying facts about [Mr. Bauer] that were proffered for their accuracy, rather than merely expressing an opinion." *Greenberg v. Spitzer*, 155 A.D.3d 27, 48 (2d Dep't 2017). Accordingly, the Skull Fracture Statement is actionable and not mere hyperbole.

## II.   The Incremental Harm Doctrine Does Not Bar Mr. Bauer's Claim

Defendants concede the Responsibility Statement is materially harmful to Mr. Bauer but argue that the Skull Fracture and CT Scan Statements are non-actionable under New York's incremental harm doctrine. However, the incremental harm doctrine is not a bar to any of the challenged statements.

As an initial matter, courts in this district (and others) have explained that "the incremental harm doctrine is to be sparingly applied, if at all." *Stern v. Cosby*, 645 F. Supp. 2d 258, 287 (S.D.N.Y. 2009) (declining to dismiss complaint under the incremental harm doctrine); *see also Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 389 (S.D.N.Y. 1998) (explaining the incremental harm doctrine has also "received a less receptive response in other circuits"); *Liberty Lobby, Inc. v. Anderson*, 746 F.2d 1563, 1568 (D.C. Cir. 1984) (Scalia, J.) ("[T]he theory must be rejected because it rests upon the assumption that one's reputation is a monolith, which stands or falls in its entirety. The law, however, proceeds upon the optimistic premise that there is a little bit of good in all of us—or perhaps upon the pessimistic assumption that no matter how bad someone is, he can always be worse."). Nonetheless, in order to warrant dismissal under this standard, the harm inflicted by the challenged statements must be "nominal or nonexistent." *Herbert v. Lando*, 781 F.2d 298, 311 (2d Cir. 1986). Again, the Skull Fracture and CT Scan Statements falsely ascribe conduct to Mr. Bauer that is significantly more violent and blameworthy than anything else L.H. described in her petition.

14

Furthermore, the incremental harm doctrine has been considered particularly inapplicable when, like here, a plaintiff "challenge[s] not just one, but many statements he believed were false and defamatory in the publication." *Herbert*, 781 F.2d at 311. Here, the harm caused by the challenged statements is exponentially greater than the harm caused by the rest of the Article because together they created the false impression that Mr. Bauer failed to deny responsibility for fracturing a woman's skull when accused of doing so—which the ordinary reader would take as an admission. The reputational harm inflicted on Mr. Bauer by *Deadspin*'s Article, with its various defamatory statements, is much greater than the harm caused by other reporting that accurately reflected the circumstances of L.H.'s sexual assault allegations.

At a minimum, it is a question of fact whether a statement that Mr. Bauer fractured a woman's skull causes only incrementally more harm than the other allegations which L.H. raised in her petition (and which Mr. Bauer also denied). *See, e.g.*, *James v. DeGrandis*, 138 F. Supp. 2d 402, 419 (W.D.N.Y. 2001) ("In this cause of action, it would be a question of fact as to whether the statement that James was 'let go' at LeMoyne for 'sexual misconduct' caused only incremental harm when compared with statements in the remainder of the letter that focused on James's other perceived debits as a coach."); *Lee v. City of Rochester*, 663 N.Y.S.2d 738, 749 n.1 (Sup. Ct., Monroe Cty. 1997) (explaining "incremental harm" is "ordinarily a jury question"); *Church of Scientology Int'l v. Time Warner, Inc.*, 932 F. Supp. 589, 594 (S.D.N.Y. 1996) ("In addition, the doctrine requires a court to measure the harm flowing from the challenged statement as compared to the harm flowing from the rest of the publication, and the parties have not yet conducted discovery on the issue of damages."). Therefore, the incremental harm doctrine does not bar recovery for Mr. Bauer as to the Skull Fracture and CT Scan Statements.

**III.    The Defamatory Statements Are Not a Fair and Accurate Report and Therefore Not Privileged**

Next, Defendants invoke New York's fair and true report privilege.  This defense is unavailing.

As an initial matter, the defamatory statements are not privileged because the source of those statements was an article by *The Athletic*, and not the underlying judicial proceedings or court documents.  *See* Compl. ¶¶ 49, 99; *see also* N.Y. Civ. Rights Law § 74 (McKinney) (privilege applies to reports on a "judicial proceeding").[8]  "[W]here the media does not directly or indirectly rely upon official records, the policy underlying the [fair report] privilege is inapplicable and the privilege itself should not be applied."  *Bufalino v. Associated Press*, 692 F.2d 266, 271 (2d Cir. 1982); *see also* David A. Elder, Defamation: A Lawyer's Guide, at § 3:2 (2012) (noting that "[t]he case law on point" suggests that the fair report privilege applies "where the defendant relies on a responsible, presumably knowledgeable, intermediary of general trustworthiness who was in attendance at the proceeding or a participant therein or an authoritative spokesperson thereof").  Here, the Article did not quote, cite, or rely on any part of the judicial proceeding L.H. initiated against Mr. Bauer, including L.H.'s petition and declaration.  *Id.* ¶ 100.  Nor did it even rely on a spokesperson for L.H. as the basis for its reporting.  As such, Defendants may not invoke Section 74 as a shield to defamation.

Nonetheless, even if the privilege could extend to reporting based on secondary sources, it is still inapplicable because the Article was not a substantially accurate report of L.H.'s petition against Mr. Bauer.  *See Cholowsky v. Civiletti*, 69 A.D.3d 110, 115 (2d Dep't 2009)  ("How a

---

[8] Defendants argue that the privilege extends to reporting based on second-hand accounts and cites three cases in support.  However, each case is inapplicable to the instant facts.  *See Adelson v. Harris*, 876 F.3d 413, 415 (2d Cir. 2017) (discussing privilege under Nevada law); *Test Masters Educ. Servs., Inc. v. NYP Holdings, Inc.*, 603 F. Supp. 2d 584, 588 (S.D.N.Y. 2009) (analyzing whether a Department of Consumer Affairs investigation was an "official proceeding"); *Cholowsky v. Civiletti*, 69 A.D.3d 110, 115 (2d Dep't 2009) (explaining how a reporter gathers information on a judicial proceeding is only material if the story is fair and substantially accurate).

reporter gathers his information concerning a judicial proceeding is immaterial" only if the "story is a fair and substantially accurate portrayal of the events in question."). New York Civil Rights Law § 74 only grants a privilege to reporting that, viewed in context, "provide[s] a substantially accurate" report of the underlying judicial proceedings. *Stone v. Bloomberg L.P.*, 163 A.D.3d 1028, 1030 (2d Dep't 2018) (affirming decision that challenged statements were not substantially accurate reporting of police investigation); *see Greenberg v. Spitzer*, 155 A.D.3d 27, 50 (2d Dep't 2017). This standard is not as low as Defendants suggest. If "missing information" or "careless reporting" create a "false impression," then the privilege is inapplicable. *Martin v. Daily News L.P.*, 121 A.D.3d 90, 101 (1st Dep't 2014) (finding inaccuracies in news columns made fair report privilege inapplicable). For example, the Appellate Division reviewed certain statements made by Elliot Spitzer in an interview where he discussed fraud charges that were pending against the plaintiff. *Greenberg*, 155 A.D.3d at 48. The Appellate Division affirmed the holding that those statements were not protected under Section 74 because Spitzer "went beyond stating that fraud charges were pending against Greenberg, or even opining on the perceived strength of the NYAG's case against Greenberg. Rather, Spitzer's *language reasonably implied* that the fraud charges against Greenberg had already been established." *Id.* (emphasis added).

Here, the Article created the distinct impression that Mr. Bauer fractured a woman's skull (and admitted to it) when he did not. Again, the Article incorrectly states that Mr. Bauer fractured his accuser's skull—a claim she did not even make in her declaration—and further reported that he did not even attempt to deny responsibility for her injuries. Compl. ¶¶ 45–52. This not only distorts what L.H. reported in her petition (which only notes "signs of a basilar skull fracture"), but it also ignores the medical records she attached to her petition (which established there was no skull fracture). *Id.* Moreover, the primary source of the Article—reporting by *The Athletic*—

expressly stated the CT scan showed no fracture.  *Id.* ¶¶ 53–55.  Furthermore, the Article ignores

the statement issued by Mr. Bauer's counsel in which he denies responsibility by calling the whole

petition "fraudulent" and baseless.  *Id.* ¶¶ 51, 56.  These are more than mere "minor" or "technical

inaccuracies."  *Martin*, 121 A.D.3d at 101.  This wholly distorts the true narrative around L.H.'s

sexual assault case against Mr. Bauer.  At bottom, it reasonably implies that Mr. Bauer has

committed a violent crime (one of which he was not, in fact, accused).  As such, the Article is not

a substantially accurate report and Defendants cannot hide behind the true and fair report privilege.

## IV.    Mr. Bauer Has Alleged Actual Malice

Despite the robust factual predicate in the Complaint, Defendants attempt to argue that

somehow Mr. Bauer has failed to adequately allege malice.  The Court should easily dispose of

this argument because it simply ignores the facts pleaded in the Complaint that support a showing

of malice.

A public figure, like Mr. Bauer, must allege that a "libelous statement was made with actual

malice, that is, made with knowledge that it was false or with reckless disregard of whether it was

false or not."  *Palin*, 940 F.3d at 809 (internal quotations omitted).  The "actual malice standard is

deceptively simple: knowing falsity or reckless disregard of the truth or falsity of the defamatory

statement."  *Sharon v. Time, Inc.*, 599 F. Supp. 538, 564 (S.D.N.Y. 1984).  "This deceptive

simplicity stems in large part from the fact-intensive nature of the actual malice inquiry."  *Id.*

Furthermore, the Second Circuit explained at length in the *Palin* decision that a plaintiff need only

allege facts that "could indicate" actual malice to survive a motion to dismiss—it does not need to

be proven at this juncture.  *Palin*, 940 F.3d at 814.  "Actual malice" is typically a question of fact.

*See, e.g.*, *Bavarian Motor Works Ltd. v. Manchester*, 61 Misc. 2d 309, 312 (Sup. Ct., N.Y. Cty.

1969) ("Whether the defendants acted with actual malice is a question of fact."); *Arizona*

*Biochemical Co. v. Hearst Corp.*, 302 F. Supp. 412, 416 (S.D.N.Y. 1969) ("Under New York Times actual malice is a vital element of a libel action and it must be alleged if the complaint is to state a claim upon which relief can be granted. Whether a defendant acted with actual malice, though, is a question of fact.").

Defendants, through their actions and sports-news website *Deadspin*, have made their malice towards Mr. Bauer abundantly clear in both the sense of malice as a desire to harm and as reckless towards the truth. The Complaint details this malice at length. First, the Complaint recounts *Deadspin*'s years-long effort to impugn Mr. Bauer's reputation and the countless articles that *Deadspin* published to malign him. Defendants, through various *Deadspin* articles, have voiced their harsh feelings towards Mr. Bauer by calling him everything from a "raging asshole" to a "racist, sexist jackass." Compl. ¶¶ 16–38.[9]

Second, Defendants knew that Skull Fracture and CT Scan Statements were false because *The Athletic* article, on which the article was primarily based, expressly stated in its correction that the CT scan showed no fracture. *Id.* ¶¶ 53–56. The Article linked directly to this contradictory reporting, as well as a TMZ article that showed Mr. Bauer's denial of responsibility. *Id.* The truth was right at Defendants' fingertips and they ignored it.

Third, following the publication of the Article, Mr. Baud ignored several attempts by Mr. Bauer's representatives to obtain a correction. *Id.* ¶¶ 57–60. G/O Media's General Counsel eventually responded to a demand letter, but in so doing only clarified that Defendants had previously reviewed *The Athletic*'s correction, ignored the correction's statement that a CT scan

---

[9] Mr. Baud is *Deadspin*'s Managing Editor. Compl. ¶ 12. Therefore, it is highly likely that he was involved in drafting and publishing the many *Deadspin* articles that attacked Mr. Bauer prior to the Article that is the subject of this Complaint. However, discovery is needed to explore precisely what role he played with publishing those prior articles. At this moment, his position is enough to support the inference that he was involved in *Deadspin*'s history of publishing incendiary articles about Mr. Bauer.

showed no fracture, and proceeded to fabricate the existence of an "initial CT scan" showing a skull fracture and falsely state L.H had "her skull fractured." *Id.* ¶¶ 61–62. Additionally, actual malice in the Article is shown by Defendants' complete disregard for G/O Media's own "Editorial Policy," which states, *inter alia*, that "information must be verified before publication, using original sources where possible." *Id.* ¶¶ 66–68. In publishing the Article, Defendants did not verify their false assertions and made no effort to review L.H.'s publicly available medical records. *Id.* ¶ 69. This is particularly egregious given the nature of the alleged crime. It is inconceivable that a respected publication could accuse someone of a violent assault without consulting publicly available documents that could confirm or debunk (in this case, debunk) the accusation.

Defendants first attempt to argue that hyperlinking to *The Athletic* and TMZ articles is not evidence of malice. The Second Circuit squarely rejected this argument and found that hyperlinking to a source that contradicts the defamatory statement directly supports the inference of malice. *Palin*, 940 F.3d 804, 815 ("But the inclusion of the hyperlinked article gives rise to more than one plausible inference, and any inference to be drawn from the inclusion of the hyperlinked article was for the jury—not the court."). Here too, the inference that linking to *The Athletic* and TMZ Articles—which were inconsistent with what Defendants reported—plausibly support the inference of malice.

Next, Defendants argue that the Complaint does not establish malice because a failure to investigate alone cannot establish malice, but that argument is irrelevant. The circumstances of "the drafting and publication process" directly bear on the malice analysis. *See Palin*, 940 F.3d at 815. Therefore, a deliberate failure to comply with one's own editorial policy in a given article supports the inference of malice. While it may be true that a mere "failure to investigate, *without more*, cannot establish" malice, *Gerbert v. Robert Welch*, 418 U.S. 323, 332 (1974) (emphasis

added), this Complaint alleges Defendants' failure to investigate and much more.  Not only did Defendants fail to verify the Article, but they also had a history of maligning Mr. Bauer, ignored contrary reporting in the sources they cited, and refused to issue a correction upon request. Defendants' failure to verify their reporting against the source articles and L.H.'s medical records—in violation of G/O Media's own Editorial Policy—is particularly egregious here given *Deadspin*'s well-documented distaste for Mr. Bauer.

Mr. Bauer alleges that actual malice can be further inferred from Defendants' interactions with his representatives after the Article was published.  Compl. ¶¶ 57–64.  Defendants try to discredit these specific allegations by arguing they are irrelevant because malice must be shown at the time of publication.  Motion at 23.  This argument simply misses the point.  Defendants' actions following publication evince their pattern of disregarding the truth about Mr. Bauer and indifference to accurate reporting.  *See Sharon*, 599 F. Supp. at 564 (explaining "a plaintiff is entitled to rely on circumstantial evidence to prove that a defendant published with actual malice, including the defendant's conduct").  As such, these allegations provide further support for the conclusion that Defendants acted with malice at the time of reporting.

The facts as alleged tell the story of a news outlet with a documented disdain for a public figure that let that disdain improperly influence their journalism.  The evidence in this case will bear those allegations out.  "At the pleading stage, however, [Mr. Bauer's] only obstacle is the plausibility standard of *Twombly* and *Iqbal*.  [H]e has cleared that hurdle."  *Palin*, 940 F.3d at 817.

## V.     The Defamatory Statements Are Defamation *Per Se*

Finally, Defendants argue that the defamatory statements do not constitute defamation *per se*, and therefore Mr. Bauer was required to plead special damages.  This argument borders on frivolous.  The settled rule is that special damages must be alleged unless the alleged falsehood is

libel per se. *Sharon v. Time, Inc.*, 575 F. Supp. 1162, 1172 (S.D.N.Y. 1983).  Defamation is considered per se actionable when the challenged statements "charg[e] plaintiff with a serious crime; (ii) that tend to injure another in his or her trade, business or profession; (iii) that plaintiff has a loathsome disease; or (iv) imputing unchastity to a woman." *Zherka v. Amicone*, 634 F.3d 642, 645 n.6 (2d Cir. 2011).  "If a statement is susceptible to a construction which is libelous per se, then special damages need not be alleged, even though that construction might depend upon the drawing of inferences or the application of simple logic or common sense." *Sharon*, 575 F. Supp. at 1172.  Here, the defamatory statements implicate both the first and second category.

First, the statements accuse Mr. Bauer of fracturing a woman's skull during sex.  Violent sexual assault is a sufficiently "serious" crime to support a claim for defamation per se.  *See, e.g.*, *Franco v. Diaz*, 51 F. Supp. 3d 235, 244–45 (E.D.N.Y. 2014); *Goldman v. Reddington*, 417 F. Supp. 3d 163, 173 (E.D.N.Y. 2019).  Defendants cannot shirk liability by arguing that they were reporting on L.H.'s accusations of sexual assault because she never accused Mr. Bauer of the crimes the Article described.

Second, the statements irrefutably injured Mr. Bauer in his profession as a major league baseball player.  In fact, the Article's title called for Mr. Bauer's career to be ruined, stating "Trevor Bauer should never pitch again: MLB needs to throw the book at him over sex assault allegations." Compl. ¶ 45.  In context, the statements disparage him as an influential baseball player.  *See Sharon*, 575 F. Supp. at 1172 ("The statements sued upon here are defamatory on their face—i.e., without a need to prove extrinsic facts—when read as part of the article in which they appeared. They are reasonably subject to a construction that would hold Sharon up to contempt and disparage him in his profession.").  Defendants even acknowledge the harm done to Mr. Bauer's career by this reporting.  *See* Motion at 3 ("Until recently, Plaintiff's professional career

had been a marked success … However, following L.H.'s allegations, he was placed on administrative leave by the league for nearly a year.").  Defamatory articles such as the one published by *Deadspin* contributed to the unreasonably harsh public backlash against Mr. Bauer, as well as the unprecedented punishment he received from MLB.  Furthermore, the violent crime Defendants claimed Mr. Bauer perpetrated would be a violation of the MLB's policy (and thus directly be incompatible with the proper conduct of his profession). *See Liberman v. Gelstein*, 80 N.Y.2d 429, 436 (1992) ("Thus, 'charges against a clergyman of drunkenness and other moral misconduct affect his fitness for the performance of the duties of his profession, although the same charges against a business man or tradesman do not so affect him.'").

Therefore, the Complaint alleges a claim for defamation *per se*.

## CONCLUSION

For all the foregoing reasons, the Court should deny Defendants' motion to dismiss. Furthermore, Plaintiff respectfully submits that any dismissal the Court may grant should be without prejudice and leave to amend.

Dated: July 15, 2022                    Respectfully submitted,

                                        */s/ Blair G. Brown*
                                        Blair G. Brown
                                        Jon R. Fetterolf
                                        ZUCKERMAN SPAEDER LLP
                                        1800 M Street, NW, Suite 1000
                                        Washington, DC 20036
                                        (202) 778-1800
                                        bbrown@zuckerman.com
                                        jfetterolf@zuckerman.com

                                        Shawn P. Naunton
                                        Nell Z. Peyser
                                        Mark J. Feaster
                                        ZUCKERMAN SPAEDER LLP
                                        485 Madison Avenue, 10th Floor
                                        New York, NY 10022

(212) 704-9600
snaunton@zuckerman.com
npeyser@zuckerman.com
mfeaster@zuckerman.com

*Attorneys for Plaintiff*
 *Trevor Bauer*