**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

TREVOR BAUER,

                         Plaintiff,

           -against-

CHRIS BAUD and G/O MEDIA, INC.,

                     Defendants.

No. 1:22-cv-1822-PAC-OTW

ECF Case

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Lynn B. Oberlander
Joseph Slaughter
BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, NY 10019
Tel: (212) 223-0200
Fax: (212) 223-1942
oberlanderl@ballardspahr.com
slaughterj@ballardspahr.com

*Attorneys for Defendants*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................... ii

ARGUMENT ....................................................................................................................1

I.     THE CHALLENGED STATEMENTS ARE SUBSTANTIALLY TRUE ........................1

II.    PLAINTIFF'S CLAIMS ARE BARRED BY THE INCREMENTAL HARM
       DOCTRINE ..........................................................................................................4

III.   THE ALLEGEDLY DEFAMATORY STATEMENTS ARE ABSOLUTELY
       PRIVILEGED ........................................................................................................6

IV.    PLAINTIFF HAS FAILED TO ADEQUATELY ALLEGE ACTUAL
       MALICE ...............................................................................................................7

V.     THE CHALLENGED STATEMENTS ARE NOT DEFAMATORY *PER SE* ..................9

CONCLUSION ................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*161 Ludlow Food, LLC v. L.E.S. Dwellers, Inc.*,
  2018 N.Y. Misc. LEXIS 3466, 60 Misc. 3d 1221(A) (Sup. Ct. N.Y. Cty. 2018)......................5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................................................8

*BYD Co. v. VICE Media LLC*,
  531 F. Supp. 3d 810 (S.D.N.Y. 2021)........................................................................................4

*Chau v. Lewis*,
  935 F. Supp. 2d 644 (S.D.N.Y. 2013)........................................................................................3

*Cummings v. City of New York*,
  No. 19-cv-7723, 2020 U.S. Dist. LEXIS 31572 (S.D.N.Y. Feb. 24, 2020).............................6

*Donald J. Trump for President, Inc. v. CNN Broadcasting, Inc.*,
  500 F. Supp. 3d 1349 (N.D. Ga. 2020)......................................................................................7

*Galu v. SwissAir*,
  1987 U.S. Dist. LEXIS 12628 (S.D.N.Y. July 30, 1987) .........................................................5

*Goldman v. Reddington*,
  417 F. Supp. 3d 163 (E.D.N.Y. 2019) .......................................................................................3

*Harte-Hanks Communications, Inc. v. Connaughton*,
  491 U.S. 657 (1989)....................................................................................................................7

*Herbert v. Lando*,
  781 F.2d 298 (2d Cir. 1986).....................................................................................................5, 7

*Jewell v. NYP Holdings, Inc.*,
  23 F. Supp. 2d 348 (S.D.N.Y. 1998).......................................................................................3, 5

*Kesner v. Dow Jones & Co.*,
  515 F. Supp. 3d 149 (S.D.N.Y. 2021)........................................................................................9

*Liberman v. Gelstein*,
  80 N.Y.2d 429 (1992) ...............................................................................................................10

*Lindell v. Man Media Inc.*,
  No. 1:21-cv-667-PAC, 2021 U.S. Dist. LEXIS 237022 (S.D.N.Y. Dec. 10,
  2021) ...........................................................................................................................................6

*McDougal v. Fox News Network, LLC*,
    489 F. Supp. 3d 174 (S.D.N.Y. 2020)..................................................................................4

*N.Y. Times v. Sullivan*,
    376 U.S. 254 (1964)...........................................................................................................7

*Palin v. N.Y. Times Co.*,
    940 F.3d 804 (2d Cir. 2019)...............................................................................................8

*Sharon v. Time Inc.*,
    599 F. Supp. 538 (S.D.N.Y. 1984) .....................................................................................9

*Tannerite Sports, LLC v. NBCUniversal News Group*,
    864 F.3d 236 (2d Cir. 2017)...............................................................................................3

**Statutes**

Cal. Penal Code § 243.4.............................................................................................................5

Plaintiff Trevor Bauer's Opposition to Defendants' Motion to Dismiss the Complaint (the "Opposition" or "Opp.," ECF No. 22) confirms that this lawsuit has no legal merit and is motivated solely by a desire to punish unflattering commentary about a matter of significant public concern.  Plaintiff has not denied and cannot deny that he engaged in sexual violence severe enough to send a woman to the hospital with "significant head and facial trauma" and "signs of a basilar skull fracture."  Nor can he contest that, whether or not she consented (or could have consented) to suffer these injuries, Major League Baseball ("MLB") thought his actions deplorable enough to suspend him for a record *two full years* after conducting its own, independent investigation.  Instead, Plaintiff's Opposition repeatedly fails to address the substance of Defendants' Memorandum in Support of its Motion to Dismiss (the "Motion" or "Mot.", ECF No. 20); repeatedly mischaracterizes the undisputed factual record; and repeatedly errs in its description and analysis of the applicable legal principles.  Plaintiff's obfuscation aside, Defendant's important and truthful reporting is protected by law, and dismissal of the Complaint with prejudice is required.

## ARGUMENT

### I.    THE CHALLENGED STATEMENTS ARE SUBSTANTIALLY TRUE.

Defendants' opening brief demonstrated that *none* of the three challenged statements are substantially false, and therefore that Plaintiff has failed to allege one of the basic elements of his defamation claim.  Mot. at 13-18.  The Motion explained that the Responsibility Statement[1] was true because the Article plainly set out Plaintiff's defense: that L.H. had consented to Plaintiff's actions, and that it was Plaintiff's view that her Petition was therefore "fraudulent."  *Id*. at 14-15.  And the Skull Fracture and CT Scan Statements were substantially true because the gist of those

---

[1] Capitalized terms not defined herein have the same meaning attributed to them in the Motion.

statements – that L.H. suffered significant injuries to which she could not have consented –

would have been the same regardless of the minor alleged inaccuracies.  *Id*. at 15-18.

In his Opposition, Plaintiff argues – wrongly – that the Responsibility Statement did not

include Plaintiff counsel's characterization of L.H.'s petition as "baseless and 'fraudulent.'"

Opp. at 9.  But the Article *did* include Plaintiff's position, noting explicitly that L.H.'s:

> request for a protective order was 'fraudulent' based on the omission of key
> details, and that what happened was consensual.  Bauer's lawyer also claims to
> 'have messages that show [the accuser] repeatedly asking for 'rough' sexual
> encounters.

Article at 3.  And, much as Plaintiff might prefer it otherwise, his counsel's statement to TMZ

did *not* categorically deny that the "rough sex" encounter happened; rather, the statement noted

that L.H. "ask[ed] for 'rough' sexual encounters involving requests to be 'choked out' and

slapped in the face[,]" and that Plaintiff merely "did what he was asked," but that "the basis for

[L.H.'s] filing a protective order" was nonetheless "fraudulent" because she "deliberately

omit[ted] key facts," showing that "that the pair's encounters were . . . 100% consensual."

Accordingly, the Responsibility Statement is substantially true.

Plaintiff's arguments with respect to the substantial truth of the Skull Fracture and CT

Scan Statements fare no better.  Plaintiff first mangles the facts by asserting that the Article made

a "definitive assertion that a woman had her skull fractured" when she only "self-report[ed]

signs" of a skull fracture.  Opp. at 10.  In reality, the Article did not "definitively assert" that

L.H. suffered a skull fracture – it *directly acknowledged* that at least one CT scan showed no

fracture.  *See* Article at 3.  Nor did L.H. "self-report[] signs of a possible head injury" – it is

undisputed that she suffered an "acute head injury;" and her "signs of a basilar skull fracture"

were diagnosed by a doctor. *See* Oberlander Decl. Ex. A (ECF No. 21-1) at ECF pages 14, 53.

Plaintiff's analysis also ignores that New York law requires that "the entire publication, as well as the circumstances of its issuance, must be considered in terms of its effect upon the ordinary reader." *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 243 (2d Cir. 2017). As Defendants pointed out in their opening brief, the Skull Fracture and CT Scan Statements were made in service of a larger point: that, in the author's opinion, L.H. could not have consented to suffer the injuries she did. Mot. at 16. The operative question is – within the discussion about the limits of consent – whether there is a substantial difference between being beaten so badly as to show "signs of a skull fracture" and being beaten so badly as to have "a fractured skull," and whether interchanging those two would have altered the "gist" of the full, contextualized statement of the author's opinion. The answer to that question is clearly no, including because the Article was revised within days to remove the allegedly false statements, and yet the gist of the challenged statement – and the story – remained *exactly the same. See* Compl. Ex. B at 3 (ECF No. 1-2) (revised Article opining that "We don't need an investigation and trial to know that she didn't consent to have her face beaten and to sustain head trauma."). Plaintiff's claim that these allegedly false statements somehow fundamentally altered the story makes no sense.[2]

---

[2] Moreover, the cases Plaintiff cites support *Defendants'* position, not Plaintiff's. In both *Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348 (S.D.N.Y. 1998), and *Chau v. Lewis*, 935 F. Supp. 2d 644 (S.D.N.Y. 2013), judges of this Court held that numerous statements *were* substantially true and therefore non-actionable. For example, in *Jewell,* the Court held that statements claiming the plaintiff was "a prime suspect" or "the main suspect" in an FBI investigation were substantially true even though the pleaded truth was that Jewell was merely "a suspect." *See id.* at 369. That distinction tracks almost precisely the difference between "signs of a skull fracture" and "a fractured skull." And Plaintiff's citation to *Goldman v. Reddington*, 417 F. Supp. 3d 163, 174 (E.D.N.Y. 2019), also supports Defendant. In *Goldman*, the court declined to hold that the defendant's claim that the plaintiff "raped her" was substantially true because the plaintiff alleged that "the accusation [was] a deliberate lie" and that the two had never even had sex. "Their narratives of what transpired would not have the same effect on any reader." *Id.* That is worlds away from the facts of this case, where Plaintiff admits not only that he had sex with L.H., but that she "requested to be 'choked out' and slapped in the face[,]" and that Plaintiff "did what he was asked." TMZ Article.

Finally, Plaintiff contends that the Skull Fracture Statement is not rhetorical hyperbole because *Deadspin* is a "news website that regularly reports on current events in sports" and because "the Article itself purports to accurately cover L.H.'s sexual assault charges." Opp. at 13. This argument misses the forest for the trees. While there are aspects of factual reporting in the Article, the Article as a whole is an opinion piece, as the headline makes abundantly clear. And the Skull Fracture Statement itself is a hyperbolic expression of the author's views on consent in these particular circumstances. Outlets purporting to report the "news" regularly engage in such rhetorical hyperbole. *See, e.g.*, *BYD Co. v. VICE Media LLC*, 531 F. Supp. 3d 810, 820 (S.D.N.Y. 2021) (statement in news article regarding Chinese company was rhetorical hyperbole); *McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 183 (S.D.N.Y. 2020) (statements of cable news host were rhetorical hyperbole). And the context of the Skull Fracture Statement clearly shows that it was rhetorical hyperbole. Mot. at 17-18.[3]

## II.   PLAINTIFF'S CLAIMS ARE BARRED BY THE INCREMENTAL HARM DOCTRINE.

Plaintiff next contends that his claim is not barred by New York's incremental harm doctrine for two reasons: first, because "[t]he reputational harm inflicted on [Plaintiff] by *Deadspin*'s Article, . . . is much greater than the harm caused by other reporting that accurately reflected" the allegations in L.H.'s petition, Opp. at 15; and second, because a determination of incremental harm is a question of fact inappropriate for disposition on a motion to dismiss. *Id.*

Plaintiff fundamentally misunderstands the incremental harm doctrine – the relevant question is not whether the Article harmed him more than other reporting on the Petition; it is

---

[3] Plaintiff also argues incorrectly that issues of substantial truth "cannot be determined as a matter of law and must be resolved by a jury" because they supposedly turn on the reaction of the "average reader" to a challenged statement. Opp. at 11. But substantial truth can be decided as a matter of law, including on a motion to dismiss. Defendants' opening brief cites numerous cases for this proposition in their opening brief, see Mot. at 14, and Plaintiff has not even attempted to refute that authority.

whether the *challenged* statements in the Article caused incrementally more harm than the

*unchallenged* statements in the same Article.  The cases cited by Plaintiff recognize as much.

*See, e.g.*, *Herbert v. Lando*, 781 F.2d 298, 311 (2d Cir. 1986) (incremental harm doctrine

"measures the incremental harm inflicted by the challenged statements beyond the harm imposed

by *the rest of the publication*.") (emphasis added).  Here, Plaintiff has not challenged statements

that (among other things) L.H. had "her face beaten," suffered "head trauma," was "sexually

assaulted," and was "anally penetrated without consent." *See* Mot. at 19.  Plaintiff suggests no

plausible reason why the challenged statements caused him any harm beyond that caused by

these other, unchallenged statements; nor could he given the gravity of the alleged injuries.[4]

     Plaintiff's second argument simply begs the question – while there are circumstances in

which it is inappropriate to determine incremental harm at the pleading stage, there are no

shortage of cases that *do* decide the issue as a matter of law.  *See, e.g.*, *Galu v. SwissAir*, 1987

U.S. Dist. LEXIS 12628, at *13 (S.D.N.Y. July 30, 1987) (dismissing claim under incremental

harm doctrine on a motion to dismiss); *161 Ludlow Food, LLC v. L.E.S. Dwellers, Inc.*, 2018

N.Y. Misc. LEXIS 3466, 60 Misc. 3d 1221(A) (Sup. Ct. N.Y. Cty. 2018) (same), *aff'd* 176

A.D.3d 434 (1st Dep't 2019); *see also Jewell*, 23 F. Supp. 2d at 395 (incremental harm may be

often decided "in the context of [dispositive] motions . . . on the basis of the statements

themselves without any discussion of evidence concerning harm or damages.").  Plaintiff offers

no reason beyond his own *ipse dixit* why it is inappropriate to do the same here.[5]

---

[4] Here and elsewhere in the Opposition, Plaintiff seems to suggest that there is legal distinction between the other violent acts of which he was accused, and which he does not challenge, and the allegation that he fractured L.H.'s skull.  Opp. at 15, 17-18, 22.  But all of these acts, if nonconsensual, would qualify as sexual battery under the California penal code.  *See, e.g.*, Cal. Penal Code § 243.4 (defining "sexual battery" without reference to any injury caused thereby).

[5] Plaintiff argues that "the incremental harm doctrine has been considered particularly inapplicable when, like here, a plaintiff 'challenge[s] not just one, but many statements'" in a publication. Opp. at 15. But the case it cites says no such thing. *See Herbert*, 781 F.2d at 311.  Moreover, Plaintiff has hardly challenged "many" statements – rather, he

### III.   THE ALLEGEDLY DEFAMATORY STATEMENTS ARE ABSOLUTELY PRIVILEGED.

In his Opposition, Plaintiff puts forth two arguments for why the challenged statements are not absolutely protected under New York's fair report privilege.  Both are baseless.

First, Plaintiff argues that the privilege is inapplicable because the Article relied on an intermediary – the Athletic Article – rather than quoting directly from L.H.'s Petition.  Opp. at 16.  But even Plaintiff's own authorities acknowledge that journalists relying on secondary sources are entitled to invoke the privilege.  *Id*. (citing authority that the privilege is inapplicable only where "the media does not directly *or indirectly* rely upon official records" and that the media may rely on "*intermediar[ies]* of general trustworthiness.") (emphases added).  These authorities only confirm what is evident from the numerous cases cited in Defendants' Motion. Mot. at 20; *See also Cummings v. City of New York*, No. 19-cv-7723, 2020 U.S. Dist. LEXIS 31572, at *54 (S.D.N.Y. Feb. 24, 2020) ("[H]yperlinking to another article that itself is a fair report of a proceeding signals to the reader that the allegations stem from a proceeding").

Plaintiff then argues that the privilege is inapplicable because the Article is not a substantially accurate report insofar as it "implies that [Plaintiff] has committed a violent crime (one of which he was not, in fact, accused)."  Opp. at 18.  But Plaintiff was accused of the violent crime of sexual assault in the Petition, and whether he fractured L.H.'s skull or merely caused her "acute head trauma" does not change the fact of that accusation. *See* note 4, *supra*.

---

has chosen to focus on three minor details of an Article replete with negative descriptions of him and his actions. That is the precise context in which the incremental harm doctrine is *most* applicable. *Cf. Lindell v. Man Media Inc.*, No. 1:21-cv-667-PAC, 2021 U.S. Dist. LEXIS 237022, at *5 n.4 (S.D.N.Y. Dec. 10, 2021) (doctrine applicable "where the unchallenged parts of a publication cause the vast majority of reputational harm…").

6

### IV.   PLAINTIFF HAS FAILED TO ADEQUATELY ALLEGE ACTUAL MALICE.

Plaintiff's Opposition concedes that he must demonstrate constitutional "actual malice" to state a claim for defamation, Opp. at 18-21, but he has not plausibly pled that Defendants published the Statements with knowledge of or reckless disregard towards their truth or falsity.

Plaintiff first argues that Defendants' supposed "years long effort to impugn" him constitutes evidence of malice "in both the sense of malice as a desire to do harm and as reckless [sic] towards the truth." Opp. at 19.   But Plaintiff has not challenged the truth of any of *Deadspin*'s prior reporting on him; nor does he cite any authority for the proposition that this earlier reporting is relevant to the determination of actual malice.[6]  That is because it is hornbook law that "that the actual malice standard is not satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the term." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 666 (1989); *see also Herbert*, 781 F.2d at 307-09 & n.6 (previous hostile statements insufficient to establish actual malice); *Donald J. Trump for President, Inc. v. CNN Broad., Inc.*, 500 F. Supp. 3d 1349, 1357 (N.D. Ga. 2020) (rejecting argument that "a record of [common law] malice and bias against the" plaintiff could support an allegation of actual malice).

Next, Plaintiff claims that actual malice can be inferred from the fact that "the Article linked directly to . . . contradictory reporting" (*i.e.*, the Athletic Article).  Opp. at 19.  But as Defendants already established, that the Article directly referenced and linked to the Athletic Article shows a *lack* of actual malice.  Mot. at 22.  Plaintiffs make no attempt to distinguish this case law, instead claiming that, "the Second Circuit has squarely rejected this argument." Opp. at

---

[6] Notably, *Deadspin* is hardly alone in publicly criticizing Plaintiff. Numerous news reports characterize him as one of the "most hated players in MLB," and he has even filed suit against other publications on the same theory that they allegedly "repeatedly impugned" him.  *See* Compl. ¶¶ 16-17, *Bauer v. The Athletic*, No. 2:22-cv-02062 (C.D. Cal.), ECF No. 1. Moreover, the actual malice inquiry centers on the persons having "responsibility for the publication" of an allegedly defamatory statement, and none of the prior *Deadspin* articles were authored by Mr. Baud.  *N.Y. Times v. Sullivan*, 376 U.S. 254, 287 (1964).

20 (citing *Palin v. N.Y. Times Co.*, 940 F.3d 804, 815 (2d Cir. 2019)).  But the *Palin* decision is

inapposite.  The Court in *Palin* did not purport to assert a rule of law, it merely determined that,

on the specific facts before it, hyperlinks to a "contrary" article could give rise to multiple

plausible inferences.  *Palin*, 940 F.3d at 815.  Here, the Athletic Article contained only an

ambiguous statement that L.H. was "initially diagnosed with signs of a basilar skull fracture,"

while a "subsequent CT scan" showed no fracture.  Athletic Article at 1.  That statement is

hardly "contrary to the claim" expressed in the Skull Fracture Statement, particularly where the

Article also *expressly noted* that further testing did not show a fracture.  Mot. at 10.

There is an obvious explanation for any discrepancy between the Athletic Article and the

*Deadspin* Article – Defendants understood the reference to a "subsequent CT scan" to mean that

the "initial diagnosis" was also the product of a CT scan.  As a matter of First Amendment law,

such a misinterpretation cannot support a finding of actual malice.  *See* Mot. at 22-23.  Plaintiff

makes no attempt to refute this argument.  Moreover, Rule 12's plausibility standard is not

satisfied by far-fetched theories where an "obvious alternative explanation" for alleged

misconduct exists.  *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009).  That is the case here.

Finally, Plaintiff offers two more half-hearted theories of actual malice. First, he argues

that Defendants' alleged "deliberate failure to comply with [their] own editorial policies" by not

"verifying" the information shows actual malice because "the circumstances of the drafting and

publication process" are relevant to that analysis. Opp. at 20.  But the law is crystal clear that

such an alleged failure to verify does not support a finding of actual malice.[7]  *See* Mot. at 23-24

(citing cases).  Second, Plaintiff asserts that Defendants' "interactions with his representatives

---

[7] Moreover, Plaintiff's theory is essentially that since there was an alleged error in the Article, Defendants must have failed to "verify" and failed to follow their editorial policies.  Such a bald assertion cannot be a plausible allegation of actual malice; if it were, every alleged error at a news site would be evidence of actual malice.

after the Article was published" constitute actual malice because they "evince their pattern of disregarding the truth . . . and indifference to accurate reporting." Opp. at 21.  But (1) as pointed out in the Motion (at 23), actual malice is measured at the time of publication, not afterward; (2) there is no "pattern of disregarding the truth" alleged in the Complaint (only a pattern of supposedly "impugning" Plaintiff); (3) even if there was, Plaintiff cites no authority that such a pattern is evidence of actual malice;[8] and (4) Plaintiff ignores that the Article *was* in fact adjusted within three days after his requests.

## V.   THE CHALLENGED STATEMENTS ARE NOT DEFAMATORY *PER SE.*

Plaintiff does not dispute his failure to allege "special damages," but contends that his claim can nevertheless proceed because it alleges defamation *per se*.  He is wrong.

Plaintiff first argues that, because the Article reported on allegations of sexual assault, it accused him of a crime, and that "Defendants cannot shirk liability by arguing that they were reporting on L.H.'s accusations of sexual assault because she never accused [Plaintiff] of the crimes the Article described." Opp. at 22.  But there is no "crime" described in the Article that was not also described in the Petition.[9]  Indeed, if Plaintiff's argument were accepted, any media outlet reporting on criminal allegations might be subject to claims of defamation *per se*.  That is obviously not the law. *Cf. Kesner v. Dow Jones & Co.*, 515 F. Supp. 3d 149 (S.D.N.Y. 2021) (article describing plaintiff as "at the center of" SEC enforcement case not defamatory *per se*).

Next, Plaintiff claims that the Article "irrefutably injured [him] in his profession," Opp. at 22, but ignores the reams of case law establishing that this species of defamation *per se* applies

---

[8] Plaintiff cites *Sharon v. Time Inc.* only for the truism that "circumstantial evidence" in general can be used to show actual malice; the case says nothing about whether an alleged "pattern of disregarding the truth" is relevant to the analysis. *Sharon*, 599 F. Supp. 538, 564 (S.D.N.Y. 1984)

[9] *See supra* note 4. Notably, Plaintiff invoked his 5th Amendment right against self-incrimination to avoid testifying at the hearing on L.H.'s request for a protective order.

9

only to statements which relate to a "matter of significance and importance for" the plaintiff's

specific employment, "rather than a more general reflection upon the plaintiff's character or

qualities." *Liberman v. Gelstein*, 80 N.Y.2d 429, 436 (1992); *see also* Mot. at 24-25 (collecting

cases).  Plaintiff makes no argument that the Article disparaged Plaintiff's abilities as a baseball

player; instead, it references unchallenged editorial statements in the Article regarding the

author's opinion of the professional consequences Plaintiff should face for his personal failings.

Opp. at 22.  But the author's opinion and MLB's ultimate decision to suspend him for an

unprecedented two years have nothing to do with his ability as a baseball player, and everything

to do with his personal "character and qualities."  By definition, the Statements are not

defamatory *per se*.[10]

## CONCLUSION

For the foregoing reasons, and those in Defendants' Motion, the Court should dismiss

Plaintiff's Complaint, with prejudice, and grant such other relief as is just and proper.

Dated: July 29, 2022
New York, New York

By:      *s/ Lynn B. Oberlander*
Lynn B. Oberlander
Joseph Slaughter
BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, New York 10019-5820
Phone:  (212) 223-0200
Fax:  (212) 223-1942
oberlanderl@ballardspahr.com
slaughterj@ballardspahr.com

*Counsel for Defendants*

---

[10] Plaintiff also suggests that his actions, as reported in the Article, are defamatory *per se* because "the violent crime Defendants claim Mr. Bauer perpetrated would be a violation of the [sic] MLB's policy." Opp. at 23.  There is no allegation in the Complaint to support this contention, and it should be disregarded.  Moreover, even if this argument were credited, the fact that MLB, after its own investigation, suspended Plaintiff for two years only shows that by Plaintiff's own logic, he *had* in fact committed a violent crime. If that were the case, the allegedly defamatory statements would be true.  Either way, they are not defamatory *per se*.