UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------X
                     :

TREVOR BAUER,           :

           *Plaintiff,*     :         22-cv-1822 (PAC)

                    :

     *v.*             :        __OPINION & ORDER__

                    :

CHRIS BAUD and G/O MEDIA, INC.,  :

                    :

          *Defendants.*  :
-------------------------------------------------X

On March 4, 2022, Plaintiff Trevor Bauer filed a Complaint against Defendants Chris Baud and G/O Media, Inc. (collectively "Defendants") alleging one count of defamation *per se.* Defendants now move to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the following reasons, Defendants' motion is GRANTED.

## BACKGROUND

At the time this action commenced, Plaintiff was a Major League Baseball ("MLB") pitcher for the Los Angeles Dodgers. Compl. ¶¶ 10, 30, ECF No. 3. Defendant G/O Media, Inc. is a media company that operates a sports publication called *Deadspin. Id.* ¶ 11. Defendant Baud is a managing editor and author at *Deadspin. Id.* ¶ 12. This case stems from a petition for a temporary restraining order filed by a third party ("L.H.") against Plaintiff on June 28, 2021 ("the Petition"), and a subsequent article Defendants published concerning the Petition on July 6, 2021 ("the Article").

### I. Judicial Notice

Plaintiff's Complaint refers to numerous articles, including the Article in both original and modified forms. Compl. Ex. A ("Article"); Ex. B ("Modified Article"). Defendants' motion to dismiss includes a copy of the Petition, an article published by the *Athletic*, and an article published

1

by TMZ.  Oberlander Decl., Exs. A–C, ECF No. 21.  These documents submitted by Defendants are not only heavily referenced in the Complaint but quoted and relied upon for legal conclusions. Compl. ¶¶ 39–43, 46–51.  The Court thus takes judicial notice of the articles and the Petition and will consider them here.  *Difolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010); *Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, 551 F. Supp. 3d 320, 326 (S.D.N.Y. 2021) (quotations omitted) ("The court may consider the full text of documents that are cited in, incorporated by reference in, or integral to the complaint."), *aff'd sub nom. Daleiden v. Planned Parenthood Fed'n of Am.*, No. 21-2068-CV, 2022 WL 1013982 (2d Cir. Apr. 5, 2022).

## II.    The Petition

On July 28, 2021, L.H. filed a petition for a temporary restraining order against Plaintiff alleging he assaulted her.  Oberlander Decl., Ex. A ("the Petition").  In the Petition, L.H. alleges she had a sexual encounter with Plaintiff that was initially consensual but turned into a violent sexual assault.[1] *Id.* at 12.[2]

On May 15, 2021, L.H. asserts she consented to have sex with Plaintiff but alleges that the encounter soon became physical to a point beyond her consent.  *Id.* at 12.  She alleges that Plaintiff choked her with her hair and that she lost consciousness.  *Id.*  When she regained consciousness, L.H. alleges that Plaintiff began punching her repeatedly in the face, causing her lip to split open and bleed.  *Id.*  She then alleges Plaintiff placed her on her back, opened her legs, and repeatedly punched her in her genitals.  *Id.*  During the encounter, she alleges that she lost consciousness

---

[1] L.H. alleges the encounter was one of two sexual encounters she had with Plaintiff.  Petition at 10–12.  Because the Article primarily reports on the details of the second alleged encounter, the Court need not detail the first.

[2] The pincites used for the Petition reflect the docket page numbers, as the Petition contains several different sets of documents.

several times and that she began to cry. *Id.* L.H. then alleges she left Plaintiff's home the morning of May 16, 2021, returned to her own home, and went to sleep. *Id.* at 13.

On May 17, 2021, L.H. alleges that she woke up in her home with "two black eyes and a completely swollen jaw and cheekbones"; scratches on the right side of her face; a "large bump" on her head; gums that were bruised black; a split upper lip; a bruise on her lip; and "severe" black bruising on top of her genitals and right buttock. *Id.* at 13. L.H. further alleges that she experienced nausea, headaches, dizziness, and disorientation after the second encounter. *Id.* at 13–14.

Following a trip to the emergency room, L.H.'s medical records indicate that she "sustained significant head and facial trauma"—specifically bruising on her cheek, orbital bone, genitals, and buttocks. *Id.* at 57–59. The medical exam also indicated L.H. was showing signs of a basilar skull fracture, including "racoon eyes" and "Battle's sign" bruising.[3] *Id.* at 59. The emergency room doctor ordered a CT scan, which subsequently indicated no basilar skull fracture. *Id.* at 59, 75–76.

Over a month after the encounter, on June 28, 2021, Plaintiff filed a Petition in the Superior Court of California for the County of Los Angeles against Plaintiff. L.H. attached her medical records to the Petition to prove the extent of her injuries. *Id.* at 17.

### III.    News Coverage of the Petition

Given Plaintiff's fame as an MLB player, the Petition caused a flurry of news reports. While the Complaint cites numerous articles on the matter, Compl. ¶ 41–44, 51, three in particular are relevant to this case. First, on July 29, 2021, TMZ published an article titled "Woman Accuses

---

[3] "A battle's sign, or battle sign, is a bruise that indicates a fracture at the bottom of the skull." *Lorusso v. Saul*, No. 3:19 CV 126 (RMS), 2020 WL 813595, at *6 n.9 (D. Conn. Feb. 19, 2020). "Raccoon eyes" describes bruising around the eye sockets. *See Wilson v. Lee*, No. 19-CV-896 (PKC), 2019 WL 4805205, at *6 (E.D.N.Y. Oct. 1, 2019)

MLB Star Of Assault . . . Bauer Denies Allegation." Oberlander Decl., Ex. B ("TMZ Article");
Compl. ¶ 51 n.25. The TMZ Article quoted Plaintiff's representative, Jon Fetterolf, as stating,
"Mr. Bauer had a brief and wholly consensual sexual relationship initiated by [L.H.] beginning in
April 2021. We have messages that show [L.H.] repeatedly asking for 'rough' sexual encounters
involving requests to be 'choked out' and slapped in the face." TMZ Article at 2. Fetterolf
continued that "[L.H.'s] basis for filing a protection order is nonexistent, fraudulent, and
deliberately omits key facts, information, and her own relevant communications." *Id.* at 3.

Second, on June 30, 2021, *The Athletic* published an article titled "Graphic details, photos
emerge in restraining order filed against Dodger's pitcher Trevor Bauer." Oberlander Decl., Ex.
C ("*Athletic* Article"); Compl. ¶ 40. The *Athletic* Article detailed L.H.'s allegations and noted that
in "[her] declaration, signed under penalty of perjury of California state laws, she said that her
medical notes state that she had 'significant head and facial trauma' and that there were signs of
basilar skull fracture." *Athletic* Article at 1; Compl. ¶ 41. On July 3, 2021, *The Athletic* issued a
correction that stated, "[a]fter publication, Trevor Bauer's representatives emphasized that medical
records showed that while the woman was initially diagnosed with signs of a basilar skull fracture,
a subsequent CT scan found no acute fracture." *Athletic* Article at 1; Compl. ¶ 43. Several other
publications initially reported the skull fracture and also issued corrections by July 2, 2021.
Compl. ¶ 44.

Finally, On July 6, 2021, Defendant Baud published the Article through *Deadspin* titled,
"Trevor Bauer should never pitch again: MLB needs to throw the book at him over sexual assault
allegations." Compl. ¶ 45; Article at 2. Citing the *Athletic* article as its source, the Article stated
that Plaintiff had been accused of sexual assault and faced administrative leave from the MLB.
Compl. ¶ 48; Article at 2–3. It further called upon the MLB to punish Bauer, noting that a lack of

accountability would be "positively shameful" and "a slap in the face to victims who are baseball fans." Article at 6.

Plaintiff does not challenge these aspects of the Article; he challenges three statements, based on the TMZ and *Athletic* Articles. The first statement pertains to Mr. Fetterolf's statement to TMZ; in the Article, Defendant Baud wrote that there was "nothing in Bauer's reported actions or his lawyer John [sic] Fetterolf's statement that indicate an attempt to deny that he was responsible . . ." ("Responsibility Statement"). Compl. ¶ 50; Article at 4.

The other two statements pertain to L.H.'s facial injuries—specifically, to an alleged skull fracture that Plaintiff asserts never existed. After quoting directly from the *Athletic* Article to describe L.H.'s injuries (a portion of the Article Plaintiff does not challenge), Defendant Baud advocates for the credibility of L.H.'s accusations by stating:

- "We don't need an investigation and trial to know that she didn't consent to have her face beaten and her skull fractured." ("Fracture Statement"); and

- "His legal team's defense?  It was only the initial CT scan that showed a fracture." ("CT Scan Statement").[4]

Plaintiff alleges that these statements were false because he did not fracture L.H.'s skull and no CT scan ever showed a fracture. Compl. ¶ 47. On July 6, 2021, Plaintiff emailed Defendant Baud three times in an attempt to correct the Article, but received no response. *Id.* ¶¶ 58–59. On July 8, 2021, Plaintiff's attorneys sent a demand letter to Defendant Baud, outlining Plaintiff's defamation allegations. *Id.* ¶ 60. G/O Media's general counsel responded that "[t]he reference to the subsequent CT scan is from the *The Athletic*'s correction." *Id.* ¶ 61. Subsequently, Defendants

---

[4] Compl. ¶ 46; Article at 3.

updated the Article.  Compl. ¶ 64; Modified Article.  While Defendants did not change the Responsibility Statement, they modified the Fracture Statement and the CT Scan Statement to read as follows respectively:

- "We don't need an investigation and trial to know that she didn't consent to have her face beaten and to sustain head trauma[;]" and

- "His legal team's response regarding the head trauma? While she was initially diagnosed with signs of a basilar skull fracture, a CT scan found no acute fracture."[5]

The Modified Article also noted that "[a]fter publication, Trevor Bauer's representatives emphasized that medical records showed that while the woman was initially diagnosed with signs of a basilar skull fracture, a CT scan found no acute fracture. It was unclear from previous reports what the basis was for the initial indication of a fracture."  Compl. ¶ 64; Modified Article at 5.

## IV.    Plaintiff's Subsequent Litigation

After initially granting the temporary restraining order, the superior court judge later denied L.H.'s request for a permanent restraining order against Plaintiff, finding in part that the allegations against Plaintiff were "materially misleading."  Compl. ¶ 2.  Following the ruling, Plaintiff commenced a defamation suit against L.H. and her attorney.  He also filed an action for defamation against the *Athletic* and journalist Molly Knight for the *Athletic* Article and for several of Knight's tweets following the publication.  *See Bauer v. Hill*, No. 8:22-CV-00868, 2022 WL 18397513 (C.D. Cal. Nov. 23, 2022); *Bauer v. Athletic Media Co.*, No. CV-22-2062, 2022 WL 18586268 (C.D. Cal. Dec. 5, 2022).  Contemporaneously, Bauer commenced this action.

---

[5] Compl. ¶ 64; Modified Article at 5.

Since then, the judges in both cases have issued orders as to the merits of Bauer's defamation claims. The Honorable James V. Selna granted a motion to strike Plaintiff's defamation claim against L.H.'s attorney pursuant to California's Anti-SLAPP law. *Bauer*, 2022 WL 18397513. The Honorable Michael W. Fitzgerald granted a motion to strike one claim against the *Athletic* for its statements within the *Athletic* Article itself but denied the motion as to both the *Athletic* and Knight with respect to Knight's tweets. *Bauer*, 2022 WL 18586268.[6]

## DISCUSSION

To defeat a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Thus, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## I.    Elements of Defamation Under New York Law

Both parties cite New York law in their briefs, implicitly agreeing that it is the appropriate choice of law. Thus, the parties' "consent concludes the choice of law inquiry." *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997).

---

[6] Judge Selna's opinion is factually distinguishable and Judge Fitzgerald's opinion is on a partial appeal at the Ninth Circuit. Especially because neither opinion applies New York law, as applies in this case, the Court has duly considered but declines to rely on either opinion.

"Under New York law a defamation plaintiff must establish five elements: (1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019). Additionally, Plaintiff is a public figure, so he must allege that the defamatory statement was made with actual malice—that is, made "with knowledge that the defamatory statement was false or with reckless disregard of whether it was false or not." *Id.* (quoting *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 173–74 (2d Cir. 2001)). "Because a defamation suit 'may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself,' courts should, where possible, resolve defamation actions at the pleading stage." *Adelson v. Harris*, 973 F. Supp. 2d 467, 481 (S.D.N.Y. 2013) (quoting *Washington Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C.Cir.1966)), *aff'd*, 876 F.3d 413 (2d Cir. 2017).

Defendants argue that Plaintiff's Complaint fails to state a claim because (1) all three of the alleged Statements were substantially true; (2) the Skull Fracture and CT Scan Statements did not cause any appreciable additional harm; (3) all three Statements are absolutely privileged under New York law; (4) Plaintiff failed to allege actual malice; and (5) Plaintiff failed to allege damages. As detailed below, the Court agrees that all three allegedly defamatory statements were substantially true and absolutely privileged under New York law, and thus declines to address the additional arguments. *See Ctr. for Med. Progress*, 551 F. Supp. 3d at 326 (granting a motion to dismiss where the alleged defamation was substantially true and privileged, and declining to address further arguments).

## II. Falsity of the Defamatory Statements

"A statement is substantially true [and therefore not defamatory] if the statement would not have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Id.* (cleaned up). "[T]ruth does not necessarily entail pinpoint accuracy about the statements[.]" *Leidig v. BuzzFeed, Inc.*, 371 F. Supp. 3d 134, 143 (S.D.N.Y. 2019), *aff'd*, 788 F. App'x 76 (2d Cir. 2019). Rather, "[w]hen the truth is so near to the facts as published that fine and shaded distinctions must be drawn and words pressed out of their ordinary usage to sustain a charge of libel, no legal harm has been done." *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017) (quoting *Fleckenstein v. Friedman*, 193 N.E. 537 (1934)). "Courts should consider 'the entire publication, as well as the circumstances of its issuance,' to interpret the meaning of the challenged phrase." *Ctr. for Med. Progress*, 551 F. Supp. 3d at 326 (quoting *Tannerite Sports*, 864 F.3d at 249).

Within each of the three Statements at issue, Plaintiff challenges one alleged falsity:  for the Responsibility Statement, Plaintiff challenges the notion that he failed to deny responsibility for L.H.'s injuries, Compl. ¶ 97; for the Skull Fracture Statement, Plaintiff challenges the assertion that he fractured L.H.'s skull, *Id.* ¶ 95; for the CT Scan Statement, Plaintiff challenges the implication that an initial CT scan indicated that L.H. suffered a skull fracture, *Id.* ¶ 102.

At the outset, the Responsibility Statement is clearly substantially true.  Plaintiff selectively quotes the Article when he alleges it conveys his unequivocal acceptance of responsibility.  *See McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 181 (S.D.N.Y. 2020) (noting that defamatory statements must be read in the context of the entire publication).  In fact, the entire statement from the Article is that "[t]here is nothing in Bauer's reported actions or his lawyer John [sic] Fetterolf's statement that indicate an attempt to deny that he was responsible, *only that her*

9

*request for a temporary restraining order was 'fraudulent' based on the omission of key details, and that what happened was consensual.*" Article at 3 (emphasis added).  This second clause of the sentence shifts the meaning of the first clause; the Article is conveying Plaintiff's failure to deny the encounter *occurred* while still noting he disputed the *nature* of the encounter.  This is an accurate summation of Jon Fetterolf's statement on Plaintiff's behalf.

As reported in the TMZ Article, Fetterolf stated that Plaintiff "had a brief and wholly consensual sexual relationship initiated by [L.H.] beginning in April 2021. We have messages that show [L.H.] repeatedly asking for 'rough' sexual encounters involving requests to be 'choked out' and slapped in the face." TMZ Article at 2.  He continued that L.H. "went on to dictate what she wanted from him sexually and he did what was asked." *Id.*  Undoubtedly, Fetterolf called the Petition "fraudulent" and stated that "[a]ny allegations that the pair's encounters were not 100% consensual are baseless, defamatory, and will be refuted to the fullest extent of the law[,]" but this characterization is consistent with the Responsibility Statement. *Id.*  The most obvious reading of Fetterolf's statement to TMZ is that Plaintiff admits he did have sexual encounters with L.H. and that those encounters involved physical violence.  Plaintiff merely claims that the physical violence was *requested* as part of the interaction and that the encounter was entirely consensual.  These exact justifications were conveyed in the Article; therefore the Responsibility Statement is unactionable. *See Chau v. Lewis*, 935 F. Supp. 2d 644, 662 (S.D.N.Y. 2013), *aff'd*, 771 F.3d 118 (2d Cir. 2014) (dismissing claims where alleged defamatory statements were accurate); *see also Leidig*, 371 F. Supp. 3d at 146.

A closer question is whether, in context, the Fracture Statement and the CT Scan Statement were substantially true.  There is no doubt as to whether an "initial CT scan" showed a skull fracture (it did not), and though there is at least some dispute as to whether L.H. actually suffered

10

a fracture,[7] for the purpose of this motion, the Court errs on the side of caution and finds that she did not suffer a fracture. *Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (drawing all reasonable inferences in plaintiff's favor on a motion to dismiss). The Court therefore finds both the Skull Fracture and CT Scan Statements technically inaccurate. This does not end the inquiry, however, as New York defamation law does not require that the statements be "dead-on accurate." *See Themed Restaurants, Inc. v. Zagat Surv., LLC*, 781 N.Y.S.2d 441, 447 n.4 (N.Y. Sup. Ct. 2004), *aff'd*, 801 N.Y.S.2d 38 (1st Dep't 2005). The question is, therefore, whether the Statements convey unactionable minor inaccuracies or whether the difference between the Statements and reality is substantial. *See Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 369 (S.D.N.Y. 1998).

Plaintiff does not contest the accuracy of L.H.'s medical records documenting her injuries. *See* Compl. ¶ 39. Nor, at any point in the Complaint, does Plaintiff allege that he was not the cause of L.H.'s injuries,[8] only that those injuries were consensual and not as severe as alleged. But the same medical records on which Plaintiff stakes his claim show that L.H. actually *did* suffer serious physical injuries. *See Ace Sec. Corp. Home Equity Loan Tr., Series 2007-HE3 ex rel. HSBC Bank USA, Nat. Ass'n v. DB Structured Prod., Inc.*, 5 F. Supp. 3d 543, 551 (S.D.N.Y. 2014) ("If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true.").

Plaintiff draws a distinction between "the assertion that Mr. Bauer broke a woman's skull, on one hand, and her self-reporting signs of a possible head injury, on the other hand . . . ." Pl.'s Opp.

---

[7] L.H.'s medical records indicate her doctor ordered a second CT scan to eliminate the possibility of a previously undetected fracture. Petition at 75.

[8] Plaintiff vehemently denies that a sexual assault occurred, Compl. ¶ 2, but that is not at issue in this case. Plaintiff only contests statements related to L.H.'s injuries and his role in those injuries.

at 10, ECF No. 22. This is the wrong distinction. The Petition and accompanying medical records indicate that, following L.H.'s encounter with Bauer, a doctor—not L.H. herself—diagnosed her with "significant head and facial trauma" and symptoms of a basilar skull fracture, including "racoon eyes" and a "Battle's sign," which are observable indicators of a potential fracture. Petition at 59. Those symptoms were not merely "self-reported," but based on a physician's initial examination and observation of L.H.   This means that the *true* bridge between the contested Statements—Plaintiff fractured L.H.'s skull as diagnosed by an initial CT scan—and reality— Plaintiff caused L.H. facial trauma that a doctor initially diagnosed as symptoms of a skull fracture—is small enough to render the "gist" or "sting" of the statements unchanged. *See Jewell*, 23 F. Supp. 2d at 369 (finding substantial truth where defendant reported that plaintiff was the "prime suspect" and "main suspect" when he was just "a suspect"); *Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504, 524 (S.D.N.Y. 2013) 662 (finding substantial truth in a technically inaccurate statement where the "gist" is the same).   As a result, the statements are substantially true and therefore nonactionable as defamation.[9]

### III. Fair Reporting Privilege

Even if there were any actionable falsity to the challenged Statements, they would still not amount to defamation because they are a substantially accurate summation of the judicial proceedings surrounding the Petition and are therefore privileged statements.   Under New York law, "[a] civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding . . . ."   N.Y. Civ. Rights Law § 74.

---

[9] The Court need not decide whether the incremental harm doctrine would apply, as it dismisses the claims on other grounds.   The Court notes, however, that the Article is rife with comments about Plaintiff that remain unchallenged and would cause immense damage to his reputation. *See Lindell v. Mail Media Inc.*, 575 F. Supp. 3d 479, 484 n.4 (S.D.N.Y. 2021).

"The New York legislature enacted this statute in order to avoid stifling 'an active, thriving, and untrammeled press' and to ensure that the press receive 'broad protection.'" *Cummings v. City of New York*, No. 19-CV-7723 (CM)(OTW), 2020 WL 882335, at *15 (S.D.N.Y. Feb. 24, 2020) (quoting *Idema v. Wagner*, 120 F. Supp. 2d 361, 365 (S.D.N.Y. 2000), *aff'd*, 29 F. App'x 676 (2d Cir. 2002)). "For a report to be characterized as fair and true within the meaning of the statute, thus immunizing its publisher from a civil suit sounding in libel, it is enough that the substance of the article be substantially accurate." *Holy Spirit Ass'n for Unification of World Christianity v. New York Times Co.*, 399 N.E.2d 1185, 1187 (N.Y. 1979) (quotations omitted). "[I]f the context in which the statements are made makes it impossible for the ordinary viewer, listener, or reader to determine whether the defendant was reporting on a judicial or other official proceeding, the absolute privilege does not apply." *Gillings v. New York Post*, 87 N.Y.S.3d 220, 223 (N.Y. App. Div. 2d Dep't 2018). "Courts look to the context of the statements in order to determine whether a reasonable observer would find that they constitute reports of a proceeding." *Cummings*, 2020 WL 882335, at *15.

The parties do not appear to dispute that the Petition is part of a judicial proceeding within the meaning of the statute, and the Court agrees. Thus, the issue is whether the Article is a fair and accurate report of that proceeding. The Court finds it is. The Article begins by noting that Plaintiff, "accused of sexual assault and battery, described in excruciating detail by The Athletic, is just the latest star athlete accused of violence against women." Article at 2 (emphasis in original). The phrase not only frames the entire Article in terms of Plaintiff facing *accusations* rather than proven facts, but also hyperlinks users to the *Athletic* Article. Indeed, the Article then goes on to quote the accusations *verbatim* from the *Athletic* Article, including language that the accusations were made in a "request to the court." *Id.* The combination of the reference to a court proceeding,

13

the clear reliance on the *Athletic* Article which explicitly reported on the judicial proceeding, and hyperlinking to that same *Athletic* Article, makes it obvious to any reader that Defendants were reporting on a judicial proceeding. *See Cummings*, 2020 WL 882335, at \*19 ("[H]yperlinking to another article that itself is a fair report of a proceeding signals to the reader that the allegations stem from a proceeding.").

Plaintiff argues that the privilege does not apply because Defendants relied on the *Athletic* Article that recounted the judicial proceeding. In doing so, Plaintiff reads the privilege too narrowly. It is well established that reliance on secondary sources that report on judicial proceedings does not negate the application of the privilege. *See Biro v. Conde Nast*, 883 F. Supp. 2d 441, 478 (S.D.N.Y. 2012). "[T]he privilege is available where a reporter who purports to report on an official proceeding does not have personal knowledge of the proceeding but instead relies on an intermediary who does." *Cholowsky v. Civiletti*, 69 A.D.3d 110, 115 (N.Y. App. Div. 2d Dep't 2009) (quoting *Bufalino v. Associated Press*, 692 F.2d 266, 271 (2d Cir. 1982), *cert. denied* 462 U.S. 1111 (1983)). Thus, the fact that Defendants primarily relied on the *Athletic* Article, itself a report on a judicial proceeding, does not negate the applicability of the privilege.

What remains to be determined is whether the challenged statements are "substantially accurate" summations of the proceeding. "A fair and true report admits of some liberality; the exact words of every proceeding need not be given if the substance be substantially stated." *Holy Spirit Ass'n for Unification of World Christianity*, 399 N.E.2d at 1187. For the reasons set forth in the Court's analysis *supra*, the statements at issue in this case are substantially accurate interpretations of L.H.'s allegations from the proceedings and Plaintiff's response to those proceedings. Plaintiff challenges their accuracy by arguing that the Article "reasonably implies that Mr. Bauer has committed a violent crime (one of which he was not, in fact, accused)." Pl.'s

Opp. at 18.  Once again, Plaintiff ignores the Petition upon which he relies.  While the privilege is inapplicable if the report suggests more serious conduct than suggested in the official proceeding, *Wexler v. Allegion (UK) Ltd.*, 374 F. Supp. 3d 302, 311 (S.D.N.Y. 2019), the true question is whether the report would have a "different effect" on the mind of the reader than the actual truth, *Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 119 (2d Cir. 2005) (quotations omitted).  The Petition accuses Plaintiff of sexual assault and of causing L.H.'s serious physical injuries.  *See generally* Petition.  Whether those injuries included a skull fracture or simply "significant head and facial trauma" and bruising does not change the nature of the accusations, nor would it produce a different effect on the mind of the reader.  Petition at 59.  *See Procter & Gamble Co. v. Quality King Distributors, Inc.*, 974 F. Supp. 190, 196 (E.D.N.Y. 1997) (noting the comments on a judicial proceeding "should not be dissected and analyzed with a lexicographer's precision").

The cases Plaintiff cites on this point, *Greenberg v. Spitzer*, 62 N.Y.S.3d 372 (N.Y. App. Div. 2d Dep't 2017) and *Martin v. Daily News L.P.*, 121 A.D.3d 90 (N.Y. App. Div. 1st Dep't 2014), are distinguishable.  In *Martin*, the court determined that the fair and true reporting privilege did not apply where the Daily News wrote that the plaintiff, a judge, was hearing a multimillion-dollar case brought by an attorney who had previously represented him.  In fact, the judge was hearing a modest foreclosure case that only fleetingly involved the plaintiff's prior attorney in the form of a withdrawn motion to intervene where the attorney did not officially appear.  *Martin*, 121 A.D.3d at 101.  In *Greenberg*, the court conducted a meticulous line by line analysis of a former attorney general's statements regarding an investigation in which he participated.  62 N.Y.S.3d at 388.  This included statements in which he implied the plaintiff had been proven guilty on certain counts.  *Id.* The court explicitly noted that readers were more likely to rely on the accuracy of these statements because the defendant had "spearheaded" investigations into the plaintiff and his company himself.

15

*Id.* This is a far cry from the few technical inaccuracies in the Article Plaintiff focuses on, and thus these cases do not establish grounds for him to recover.

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS** the motion to dismiss.[10]  Because the claims are premised on nonactionable statements, the claims are dismissed with prejudice.  The Clerk of the Court is directed to terminate the motion at ECF No. 19.

Dated: New York, New York       SO ORDERED
        March 1, 2023

                                     HONORABLE PAUL A. CROTTY

                                     United States District Judge

---

[10] The Court notes that Defendants have reserved their right to request costs and attorney's fees under N.Y. Civ. Rights Law § 70-a.  Defs.' MOL at 13 n.11, ECF No. 20.  The Court declines to address whether Defendants are entitled to these fees at this time, but notes that courts in this district have expressed skepticism as to the applicability of § 70-a in federal court. *See Prince v. Intercept*, No. 21-CV-10075 (LAP), 2022 WL 5243417, at *18 (S.D.N.Y. Oct. 6, 2022) (collecting cases).